IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, *et al.* <br><br> Defendants. | Civil Action No. 1:21-cv-0094 (RJL) |

**MOTION OF ORGANIZATIONS ADVOCATING FOR THE RIGHTS OF SURVIVORS OF DOMESTIC VIOLENCE AND HUMAN TRAFFICKING FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF AND TO ENLARGE THE PAGE LIMIT FOR SUCH BRIEF**

Proposed *Amici curiae*, ten non-profit organizations that advocate for, and provide resources and services on behalf of victims of domestic violence, sexual assault, and/or human trafficking respectfully request leave to file the attached *amici curiae* brief pursuant to Local Rule 7(o) in support of the relief sought in Plaintiffs' Motion to Stay Agency Action under 5 U.S.C. § 705 and/or for a Preliminary Injunction, ECF No. 9. Proposed *amici curiae* also request an enlargement of the 25-page limit for the reasons set forth below.

*Amici curiae* state that Plaintiffs has consented to the filing of this *Amici curiae* brief. Defendants do not object to the filing of this motion seeking leave to file. A proposed order accompanies this motion.

In support of this motion, *amici curiae* state as follows:

1. This action challenges a final rule promulgated by the Executive Office for Immigration Review. *Appellate Procedures and Decisional Finality In Immigration Proceedings; Administrative Closure*, 85 Fed. Reg. 81588 (December 16, 2020) (the

"Administrative Closure Rule").

2.  *Amici* have a direct interest in this case because the challenged Administrative Closure Rule took effect on January 15, 2021, and has an immediate and irreparable impact on noncitizen survivors of violence, whom *Amici* serve.  Specifically:

(a)  Proposed *amicus curiae* **ASISTA Immigration Assistance** is a national organization dedicated to helping attorneys assist noncitizen survivors of violence with their immigration matters through comprehensive, cutting-edge technical assistance and resources. ASISTA worked with Congress to create and expand routes to secure immigration status for survivors of domestic violence, sexual assault, and other crimes, which were incorporated in Violence Against Women Act (VAWA) of 1994 and its progeny.  ASISTA serves as liaison for the field with Department of Homeland Security ("DHS") personnel charged with implementing these laws, most notably Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement, and DHS's Office for Civil Rights and Civil Liberties.  ASISTA trains and provides technical support to local law enforcement officials, civil and criminal court judges, domestic violence and sexual assault advocates, and legal services, non-profit, *pro bono* and private attorneys working with immigrant crime survivors.  ASISTA has previously filed amicus briefs with the United States Supreme Court and various other federal courts of appeal.  *See, e.g., United States v. Castleman*, 134 S. Ct. 1405 (2014); *State of Washington v. Trump*, No. 17-35105 (9th Cir. 2017); L.D.G. v. *Holder*, 744 F.3d 1022 (7th Cir. 2014).

(b)  Proposed *amicus curiae* **Asian Pacific Institute on Gender-Based Violence (API-GBV)** is a national resource center on domestic violence, sexual violence, trafficking, and other forms of gender-based violence in Asian and Pacific Islander and immigrant communities, and it serves a national network of advocates; community-based service

programs; federal agencies; national and state organizations, legal, health, and mental health professionals; researchers; and policy advocates from social justice organizations. API-GBV analyzes critical issues, promotes culturally relevant evidence-informed intervention and prevention, provides consultation, technical assistance and training, develops resources, conducts and disseminates research, and impacts systems of change through administrative advocacy and policy analysis.

(c) Proposed *amicus curiae* **Casa de Esperanza** provides emergency shelter and support services for women and children experiencing domestic violence, with a primary focus on mobilizing Latinas and Latino communities to end domestic violence. Over the past three decades, Casa de Esperanza has expanded to offer critical and comprehensive services and support, ranging from family advocacy and shelter services to leadership development and community engagement initiatives. In 2009, Casa de Esperanza launched the National Latin@ Network for Healthy Families and Communities (NLN), which is a national resource center that provides training & technical assistance, research, and national policy advocacy focused on addressing and preventing domestic violence and sexual assault. Casa de Esperanza also serves on the Steering Committee of the National Task Force to End Sexual and Domestic Violence. Casa de Esperanza is committed to enhancing access to safety, well-being, and justice for all survivors of gender-based violence, including those from immigrant communities.

(d) Proposed *amicus curiae* **Freedom Network USA (FNUSA)** is the largest alliance of human trafficking advocates in the United States, providing trafficking survivors in over 40 cities comprehensive legal and social services, including representation in immigration cases. In total, FNUSA members serve over 2,000 trafficking survivors per year, including adults and minors, survivors of both sex and labor trafficking, over 65% of whom are foreign

national survivors. FNUSA provides training and advocacy to increase understanding of the wide array of human trafficking cases in the US, was involved in the passage of the Trafficking Victims Protection Act, and has been a key advocate in each subsequent Reauthorization. FNUSA has an interest in ensuring that survivors are fully protected and have access to the full array of immigration relief for which they are qualified.

(e) Proposed *amicus curiae* **Futures Without Violence (FUTURES)**, is a national nonprofit organization that has worked for over thirty years to prevent and end violence against women and children around the world. FUTURES mobilizes concerned individuals; children's, women's, and civil rights groups; allied professionals; and other social justice organizations to end violence through public education and prevention campaigns, public policy reform, training and technical assistance, and programming designed to support better outcomes for women and children experiencing or exposed to violence. FUTURES joins with the other *Amici* because it has a long-standing commitment to supporting the rights and interests of women and children who are victims of violence regardless of their immigration, citizenship, or residency status. FUTURES co-founded and co-chaired the National Network to End Violence Against Immigrant Women working to help service providers, survivors, law enforcement, and judges understand how best to work collaboratively to bring justice and safety to immigrant victims of violence. Using this knowledge, FUTURES helped draft legislative recommendations that were ultimately included in VAWA and the Trafficking Victims Protection Act to assist immigrant victims of violence.

(f) Proposed *amicus curiae* **The National Alliance to End Sexual Violence** is the voice in Washington for the 56 state and territorial sexual assault coalitions and over 1500 rape crisis centers working in their communities to address and end sexual violence. The

programs in National Alliance to End Sexual Violence's network see the widespread and devastating impacts of sexual violence on survivors every day—especially those who are more vulnerable like immigrant survivors. National Alliance to End Sexual Violence have an interest in making it less difficult for immigrant survivors to seek safety and justice.

(g)     Proposed *amicus curiae* **The National Coalition Against Domestic Violence** provides a voice to victims and survivors of domestic violence. It strives to foster a society in which there is zero tolerance for domestic violence by influencing public policy, increasing public awareness of the impact of domestic violence, and providing programs and education that drive that change.

(h)     Proposed *amicus curiae* The **National Domestic Violence Hotline (The Hotline)**, first established in 1996 as a component of VAWA, provides lifesaving tools and immediate support to enable victims to find safety and live lives free of abuse. Callers to The Hotline can expect highly trained, experienced advocates to offer compassionate support, crisis intervention information, educational services and referral services in more than 200 languages. The Hotline offers free, confidential, and 24/7 support to survivors year-round through text, chat, and phone services. A substantial number of victims The Hotline serves are immigrants or those who request help related to immigration-related issues.

(i)     Proposed *amicus curiae* **The National Network to End Domestic Violence (NNEDV)** is a network of the 56 state and territorial domestic violence and dual domestic violence and sexual assault coalitions and their over 2,000 member programs. NNEDV serves as the national voice for millions of women, children, and men victimized by domestic violence. NNEDV works with federal, state and local policy makers and domestic violence advocates to secure and implement increased protections in VAWA and related federal

legislation.  NNEDV supports legislation that protects immigrant domestic and sexual violence survivors and provides pathways for survivors to obtain immigration status. NNEDV is deeply concerned with survivor safety, including the vital role that access to resources plays in their ability to escape and rebuild their lives after abuse.

(j) Proposed *amicus curiae* **Her Justice** has been dedicated to making quality legal representation accessible to low-income women in New York City in family, matrimonial, and immigration matters since 1993.  Her Justice recruits and mentors volunteer attorneys from the City's law firms to stand side-by-side with women who cannot afford to pay for a lawyer, giving them a real chance to obtain legal protections that transform their lives.  Our immigration practice focuses on representing immigrant survivors of gender-based violence pursuing relief under VAWA, many of whom are in removal proceedings.  Her Justice has appeared before Courts of Appeals and the United States Supreme Court in numerous cases as *amicus*.

3. *Amici curiae* have an interest in this case because the Administrative Closure Rule obstructs survivor-based immigration relief, consequently endangering the lives, security and well-being of the constituencies that *amici* seek to help.  Survivors of violence—especially domestic violence, sexual assault, and human trafficking—face immense obstacles to speaking out themselves, and a*mici* provide them a necessary voice, especially in the rulemaking process. *Amici* are particularly positioned to provide the Court with the impact of the truncated comment period on survivors and their advocates.  *Amici* may also assist the Court in understanding the complex set of statutes that Congress passed to provide meaningful relief to noncitizen survivors and how the Administrative Closure Rule undercuts those statutes.  *Amici* are especially positioned to provide the Court with accounts of the life-altering impact the unlawful Administrative Closure Rule will have.  As such, *Amici* offer the Court a valuable perspective on

the issues before it.

    4.  The Federal Rules of Civil Procedure do not address motions for leave to file briefs as *amicus curiae* in the United States District Courts, but this Court has "inherent authority" to appoint participation a*mici*. *See Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008). The Court has "broad discretion" to grant such motions, *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007), and the Court often grants such motions when "the information offered is 'timely and useful.'" *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996) (quoting *Waste Mgmt. of Pa. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995)). "The filing of an amicus brief should be permitted if it will assist the judge by presenting ideas, arguments, theories, insights, facts or data that are not to be found in the parties briefs." *Mashpee Wampanoag Tribe v. Bernhardt*, No. CV 18-2242 (PLF), 2020 WL 2615523, at *1 (D.D.C. May 22, 2020) (quotation marks and citations omitted).

    5.  In addition to seeking leave to bring their perspective before the Court, *amici* seek an extension of the 25-page limit to 32 pages for the following reasons:

    (a)  As demonstrated in the attached proposed brief, *amici*'s argument totals 27 pages.

    (b)  Under Local Rule 7(o)(5), *Amici* are also required to include in their brief the nature of their interests and identity, and because the ten organizations have consolidated their "ideas, arguments, theories, insights, facts or data" into one brief, such statements require additional space. *Mashpee Wampanoag Tribe*, 2020 WL 2615523, at *1.

    (c)  This is a complex case—challenging a lengthy final rule—in the dense subject matter of immigration law. Plaintiffs' Complaint is over 100 pages and consists of 394

paragraphs. *Amici* requires 32 pages in order to convey the statutory background of a complex set of federal statutes that provide noncitizen survivors with pathways to legal status, convey the unique position *amici* were in at the time of the Administrative Closure Rule's comment period, and convey the unique harms that the final rule will inflict upon noncitizen survivors.

      6.      In accordance with Local Civil Rule 7(o)(5), incorporating Federal Rule of Appellate Procedure 29(a)(4), *amici* certify that:

      (a)      *Amici* are not publicly-traded corporations, and a disclosure statement to such effect is included in the attached proposed brief;

      (b)      The attached brief was authored entirely by counsel for a*mici* and not by counsel for any party, in whole or in part;

      (c)      No party or counsel for any party contributed money to fund preparing or submitting the attached brief;

      (d)      Apart from a*mici*, its members, and its counsel, no other person contributed money to fund preparing or submitting the attached brief.

## CONCLUSION

For these reasons, *Amici* respectfully request that they be granted leave to file the attached *amici curiae* brief.

Dated: February 5, 2021     Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Paul A. Zevnik*
    Paul A. Zevnik (D.C. Bar No. 952465)
    paul.zevnik@morganlewis.com
    MORGAN, LEWIS & BOCKIUS LLP
    1111 Pennsylvania Avenue, NW
    Washington, DC  20004
    Telephone: +1.202.739.3000
    Facsimile:  +1.202.739.3001

    Katherine A. Vaky* (Pa. Bar No. 329291)
    MORGAN, LEWIS & BOCKIUS LLP
    One Oxford Centre, Thirty-Second Floor
    Pittsburgh, PA  15219
    Telephone:  (412)560-3300
    Facsimile:  (412) 560-7001

    Attorneys for *Amici Curiae*

*pro hac vice* application forthcoming

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 5, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that a true and correct copy of the document was served on all counsel of record through the Court's CM/ECF system.

*/s/ Paul A. Zevnik*
Paul A. Zevnik
