**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, *et al.*, <br><br> *Defendants.* | Case No.: 1:21-cv-00094 (RJL) |

**BRIEF OF *AMICUS CURIAE* KIDS IN NEED OF DEFENSE IN SUPPORT OF
PLAINTIFFS' MOTION TO STAY AGENCY ACTION UNDER 5 U.S.C. § 705
AND/OR FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTEREST OF *AMICUS CURIAE* ..........................................................................................1

INTRODUCTION ........................................................................................................................1

ARGUMENT ................................................................................................................................2

I.      AFFORDING CHILDREN DUE PROCESS MEANS TAKING ACCOUNT OF
        CHILDREN'S PAST AND PRESENT VULNERABILITIES..........................................2

II.     A REGULATORY BAR TO ADMINISTRATIVE CLOSURE DISCOURAGES
        ADJUDICATORS FROM AFFORDING CHILDREN TIME TO OBTAIN
        RELIEF ..............................................................................................................................5

        A.      Congress Conferred On USCIS Jurisdiction Over Most Forms Of Relief
                For Children ...........................................................................................................6

        B.      Administrative Closure Has Allowed Immigration Judges To Avoid
                Unnecessary Hearings While Awaiting USCIS' Adjudications .............................7

III.    RESTRICTIONS ON REMAND, REOPENING, AND THE INTRODUCTION
        OF NEW EVIDENCE ELIMINATE CORRECTIVE MECHANISMS ON
        WHICH CHILDREN RELY .............................................................................................10

        A.      Children Face Unique Challenges In Navigating Removal Proceedings,
                Which May Inhibit Their Presentation Of Evidence And Result In
                Removal Orders Even Where Meritorious Claims Are Available........................10

        B.      Due Process Demands Accommodations For Children Navigating
                Adversarial Removal Proceedings. ......................................................................11

        C.      The Rule Dismantles Certain Minimal Due Process Safeguards For
                Children Contesting A Denial Of Relief..............................................................13

CONCLUSION...........................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alvarez Lagos v. Barr*,
   927 F.3d 236 (4th Cir. 2019) ................................................................4

*Matter of Avetisyan*,
   25 I. & N. Dec. 688 (BIA 2012) ...........................................................8

*Matter of Castro-Tum*,
   27 I. & N. Dec. 271 (A.G. 2018) ...........................................................8

*In re Cristel Esperanza Melendez-Melendez*,
   File No. AXXX XX9 189, 2017 WL 1508928 (BIA Mar. 15, 2017)......................6

*Hernandez-Serrano v. Barr*,
   981 F.3d 459 (6th Cir. 2020) ................................................................8

*Matter of J-J-*,
   21 I. & N. Dec. 976 (BIA 1997) ..........................................................14

*Matter of L-A-B-R-*,
   27 I. & N. Dec. 405 (A.G. 2018) .......................................................6, 9

*Matter of M-A-C-O-*,
   27 I. & N. Dec. 477 (BIA 2018) ..........................................................11

*Meza Morales v. Barr*,
   973 F.3d 656 (7th Cir. 2020) ................................................................8

*Osorio-Martinez v. Att'y Gen.*,
   893 F.3d 153 (3d Cir. 2018)..................................................................3

*Matter of S-O-G- & F-D-B-*,
   27 I. & N. Dec. 462 (A.G. 2018) ...........................................................9

*Zuniga Romero v. Barr*,
   937 F.3d 282 (4th Cir. 2019) ................................................................8

# STATUTES

6 U.S.C. § 271(b) ..............................................................................................6

8 U.S.C. § 1101(a)(15)(T) ..................................................................................3

8 U.S.C. § 1101(a)(15)(U) ..................................................................................3

8 U.S.C. § 1101(a)(27)(J)(i)–(ii) ........................................................................6

8 U.S.C. § 1158(b)(3)(C) ....................................................................................7

8 U.S.C. § 1229a ................................................................................................1

8 U.S.C. § 1229a(a) ............................................................................................5

8 U.S.C. § 1229a(b)(5)(C) ................................................................................14

8 U.S.C. § 1229a(c)(7)(A) ................................................................................14

8 U.S.C. § 1229a(c)(7)(C) ................................................................................14

8 U.S.C. § 1232(d)(2) ........................................................................................7

8 U.S.C. § 1232(d)(8) ......................................................................................15

8 U.S.C. § 1252(b)(1) ......................................................................................14

8 U.S.C. § 1252(b)(4) ......................................................................................13

# REGULATIONS

8 C.F.R. § 1003.1(d)(3)(iv) ..............................................................................13

8 C.F.R. § 1003.2(a) ........................................................................................14

8 C.F.R. § 1003.23(b)(1) ..................................................................................14

8 C.F.R. § 1240.1(a)(1)(ii) ................................................................................6

8 C.F.R. § 1240.8(d) ..........................................................................................5

8 C.F.R. § 1240.12(c) ........................................................................................5

# OTHER AUTHORITIES

American Bar Association, Commission on Immigration, *Standards for the Custody, Placement and Care; Legal Representation; and Adjudication of Unaccompanied Alien Children in the United States* (Aug. 2018), https://tinyurl.com/y35euvhx ....................................................................3

Executive Office for Immigration Review, Appellate Procedures and Decisional
    Finality in Immigration Proceedings; Administrative Closure, Proposed Rule,
    85 Fed. Reg. 52,491 (Aug. 26, 2020).............................................................................2

Executive Office for Immigration Review, Appellate Procedures and Decisional
    Finality in Immigration Proceedings; Administrative Closure, Final Rule,
    85 Fed. Reg. 81,588 (Dec. 16, 2020) ................................................................... *passim*

Executive Office for Immigration Review, *Enhanced Case Flow Processing in
    Removal Proceedings*, Policy Memo. 21-05 (Nov. 30, 2020),
    https://tinyurl.com/y3g5nspx ......................................................................................11

Executive Office for Immigration Review, *Guidelines for Immigration Court
    Cases Involving Juveniles, Including Unaccompanied Alien Children*,
    Operating Policies & Procedures Memo. 17-03 (Dec. 20, 2017),
    https://tinyurl.com/y2vzc7bj ..........................................................................9, 11, 15

Executive Office for Immigration Review, Performance Plan, Adjudicative
    Employees, https://tinyurl.com/11mn2o3k ..................................................................12

Executive Office for Immigration Review, Procedures for Asylum and
    Withholding of Removal, 85 Fed. Reg. 81,698 (Dec. 16, 2020)..................................12

Executive Office for Immigration Review, *Update of Guidance on Continuances
    in Immigration Proceedings*, Policy Memo 21-13 (Jan. 8, 2021),
    https://tinyurl.com/y5964qa8 ........................................................................................9

Executive Office for Immigration Review, *Use of Status Dockets*, Policy Memo.
    19-13 (Aug. 16, 2019), https://tinyurl.com/yymkoqu ...................................................9

HealthRight International, *Attorneys: Request an Evaluation* (2020),
    https://tinyurl.com/y3oophkj ..........................................................................................4

HIAS, Comment, Executive Office for Immigration Review Dckt. No. 19-0022
    (Sept. 25, 2020), https://tinyurl.com/2hlnhsew............................................................8

Kids in Need of Defense, Comment, Executive Office for Immigration Review
    Dckt. No. 19-0022 (Sept. 25, 2020), https://tinyurl.com/1tp7f214..............................8

Kids in Need of Defense, *KIND Blueprint: Concrete Steps to Protect
    Unaccompanied Children on the Move* (2020), https://tinyurl.com/y2axyckn .......10

Kids in Need of Defense, *Neither Security Nor Justice: Sexual and Gender-based
    Violence and Gang Violence in El Salvador, Honduras, and Guatemala* (May
    2017), https://tinyurl.com/yy8ghrla ..............................................................................2

Make the Road New York, Comment, Executive Office for Immigration Review
    Dckt. No. 19-0022 (Sept. 25, 2020), https:// tinyurl.com/2bpffwgs...........................8

Physicians for Human Rights, *Attorneys: How PHR Can Help Your Client* (2021),
    https://tinyurl.com/y243kreu..........................................................................................4

Sara B. Johnson et al., *Adolescent Maturity and the Brain: The Promise and
    Pitfalls of Neuroscience Research in Adolescent Health Policy*, J. of
    Adolescent Health (Sept. 2009), https://tinyurl.com/kaekqe7 ...................................4

iv

United Nations High Commissioner for Refugees, *Children on the Run* (2014), https://tinyurl.com/y4r5x6ec ............................................................................................2

U.S. Citizenship and Immigration Services, *Guidelines for Children's Asylum Claims* (Mar. 2009), https://tinyurl.com/y5cwqoje ..................................................4

U.S. Citizenship and Immigration Services, *Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children* (Mar. 25, 2009), https://tinyurl.com/yy45vs9m ...................................................................................7

U.S. Conference of Catholic Bishops, *Care for Trafficked Children* (Apr. 2006), https://tinyurl.com/yxtqjzlj.........................................................................................3

U.S. Department of Justice, Office of Juvenile Justice and Delinquency Prevention, *Child Forensic Interviewing: Best Practices* (Sept. 2015), https://tinyurl.com/yyjn4abw ................................................................................3, 4

U.S. Department of Justice, Special Immigrant Juvenile Status, 58 Fed. Reg. 42,843 (Aug. 12, 1993)..................................................................................................6

U.S. Department of State, *Visa Bulletin for February 2021*, https://tinyurl.com/k0odxejk ......................................................................................7

Young Center. for Immigrant Children's Rights, Comment, Executive Office for Immigration Review Dckt. No. 19-0022 (Sept. 25, 2020), https://tinyurl.com/2bwhlcd5 .....................................................................................8

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Kids in Need of Defense (KIND) is a national non-profit organization whose ten field offices provide free legal services to unaccompanied immigrant children.  Since 2009, KIND has received referrals for over 21,000 children from 71 countries and has trained and mentored pro bono attorneys at over 670 law firms, corporations, law schools, and bar associations. KIND also advocates for changes in law and policy to enhance protections for unaccompanied children.

As an organization serving unaccompanied children in removal proceedings before the Executive Office for Immigration Review (EOIR), KIND has a significant interest in the impact on children and on the organizations serving them of regulations governing removal proceedings before immigration judges and the Board of Immigration Appeals (BIA).  KIND submits this brief to highlight how the challenged rule would conflict with long-established law and policy, particularly protections for unaccompanied children.[1]

## INTRODUCTION

Unaccompanied children in removal proceedings are a uniquely vulnerable population: often survivors of trauma; seeking safety from violence, sometimes inflicted by those meant to protect them; and often hampered by capacity limitations from fully participating in their proceedings.  Recognizing this vulnerability, Congress has acted to provide some measure of protection to children, not only through substantive standards for humanitarian relief but also through procedural safeguards to allow children to navigate an immigration system made for adults.  Many unaccompanied children facing removal proceedings in immigration court, *see* 8 U.S.C. § 1229a, will have a defense to removal by demonstrating eligibility for humanitarian relief such as asylum, special immigrant juvenile (SIJ) status, or T or U visas.  Each form of protection is governed by rigorous standards – standards that many children will be able to satisfy, though

---

[1]   KIND certifies that this brief was authored entirely by its counsel and not by counsel for any party, in whole or in part; no party or counsel for any party contributed money to fund preparation or submission of this brief; and apart from *amicus curiae*, its members, and its counsel, no other person contributed money to fund preparation or submission of this brief.

not necessarily on a rapid timeframe or at their initial adjudication. Accordingly, shifts in adjudication and appeal processes can starkly impact fairness toward children.

The new rule amending a variety of EOIR procedures, Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure, 85 Fed. Reg. 81,588 (Dec. 16, 2020) (the Rule), will limit adjudicators' discretion and curtail flexibility for all respondents, but its effects will fall hardest on unaccompanied children. Two of the most salient impacts on children will arise from the elimination of administrative closure, which had allowed immigration judges to temporarily pause removal proceedings for an appropriate purpose, such as a child's pursuit of immigration relief through channels outside of EOIR's purview; and from restrictions on motions to remand or reopen that will make it nearly impossible for adjudicators to consider new evidence or newly established eligibility for relief once an immigration judge has denied a child relief in the first instance. *Amicus* and others provided comments on the Proposed Rule, 85 Fed. Reg. 52,491 (Aug. 26, 2020), highlighting some of the needs and hardships particular to children in removal proceedings and the ways in which the Rule's restrictive changes will deprive children of a full and fair opportunity to present claims for relief. The final Rule is arbitrary and capricious in that it failed to respond meaningfully to these comments and should, as Plaintiffs urge, be stayed and/or enjoined.

## ARGUMENT

## I.    AFFORDING CHILDREN DUE PROCESS MEANS TAKING ACCOUNT OF CHILDREN'S PAST AND PRESENT VULNERABILITIES

Many children seek protection in the United States due to harms they fear or have experienced in their countries of origin. *See* United Nations High Commissioner for Refugees, *Children on the Run* at 6 (2014), https://tinyurl.com/y4r5x6ec ("Children on the Run"); *see also* KIND, *Neither Security Nor Justice: Sexual and Gender-based Violence and Gang Violence in El Salvador, Honduras, and Guatemala* at 5 (May 2017), https://tinyurl.com/yy8ghrla. In particular, child migration from Central America has been conclusively connected to gang violence, the erosion of human rights, violence in the home, and other grave danger and harms. *See* Children on the Run at 11. Gender-based violence, anti-gang activism, sexual orientation or gender identity,

or indigenous ethnicity are just a few grounds on which children might receive asylum.  Other children will be eligible for SIJ status, which protects certain abused, abandoned, or neglected children, *see Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 158 (3d Cir. 2018); or for T or U visas for victims of trafficking or other crimes, *see* 8 U.S.C. § 1101(a)(15)(T), (U).

By introducing inappropriately rigid timetables for EOIR proceedings, eliminating administrative closure, and imposing more restrictive post-decision procedures, the Rule will make it impossible for EOIR to deal appropriately with children's claims.  As a principal drafter of the 2008 Trafficking Victims Protection Reauthorization Act explained, a child "usually knows nothing about US courts or immigration policies and frequently does not speak English . . . . The majority of these children have been forced to struggle through an immigration system designed for adults."  154 Cong. Rec. 24,565 (2008) (Stmt. of Sen. Feinstein).  The Rule exacerbates, rather than alleviates, the effects of multiple vulnerabilities that impede children's progress toward establishing eligibility for relief, a few of which are discussed here.

*First*, as U.S. Department of Justice (DOJ) guidance recognizes, a history of trauma may "interfere with a child's ability or willingness to report information about violent incidents"; traumatized children may have piecemeal memories of the harm they suffered, requiring added time to develop and corroborate their claims.  U.S. Dep't of Justice, Office of Juvenile Justice and Delinquency Prevention, *Child Forensic Interviewing: Best Practices* at 5 (Sept. 2015), https://tinyurl.com/yyjn4abw ("Child Forensic Interviewing").  Moreover, forcing the confrontation of traumatic facts is likely to be counterproductive.  *Id.* (stating interviewers "should not attempt to force a disclosure or continue an interview when a child becomes overly distressed, which may revictimize the child"); *see also* U.S. Conference of Catholic Bishops, *Care for Trafficked Children* at 2 (Apr. 2006), https://tinyurl.com/yxtqjzlj (with child trafficking victims, "[a]ttempts at immediate consistency and coherence will probably only intimidate the child").  Children need time to build trust in the professionals who advocate for them, and to understand the adversarial system.  Am. Bar Ass'n, Comm'n on Immigration, *Standards for the Custody, Placement and Care; Legal Representation; and Adjudication of Unaccompanied Alien Children in the United States* at 15 (Aug. 2018), https://tinyurl.com/y35euvhx ("Children who have had

distressing experiences may find it very difficult to trust unfamiliar adults . . . be patient if Children are initially reluctant to talk and avoid pressuring Children to talk before they are ready.") ("ABA Standards for Children").  A survivor of childhood trauma who can satisfy the high bar for humanitarian relief is rarely able to do so on an arbitrary timeframe.

*Second*, and relatedly, capacity limitations are inherent in children's cognitive, social, and emotional development.  As DOJ guidelines explain, perception, memory, recall, and other capacities develop with age, yet even older children vary in cognitive abilities.  *See* Child Forensic Interviewing at 3-4.; *see also* Sara B. Johnson et al., *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, J. of Adolescent Health at 216 (Sept. 2009), https://tinyurl.com/kaekqe7 (the brain continues to mature well into the 20s).  Cultural and linguistic differences may further hinder a child's communication and comprehension.  *See* Child Forensic Interviewing at 4.  Due process demands that respondents have an opportunity to participate meaningfully in their immigration proceedings, and this means affording children the time necessary to prepare and present support for their relief applications in accordance with their development and capacities.  *See* ABA Standards for Children at 16.

*Third*, pursuing a claim for humanitarian relief is labor-intensive.  For example, a child persecuted on account of ethnicity may be able to recount the harm he or she experienced, but may need to rely on a country conditions expert to supply context for the persecutor's motivation.  *See, e.g.*, U.S. Citizenship and Immigration Services, *Guidelines for Children's Asylum Claims* at 43 (Mar. 2009), https://tinyurl.com/y5cwqoje (even if child does not understand persecutor motivation, objective circumstances may support nexus); *see generally Alvarez Lagos v. Barr*, 927 F.3d 236 (4th Cir. 2019) (relying extensively on expert testimony when assessing asylum claim). Similarly, an expert forensic evaluation of a child's medical or psychological history can provide essential evidence, but obtaining these services *pro bono* often takes months.  *See* Physicians for Human Rights, *Attorneys: How PHR Can Help Your Client* (2021), https://tinyurl.com/y243kreu (12-week lead time to request expert evaluation); *see also* HealthRight International, *Attorneys: Request an Evaluation* (2020), https://tinyurl.com/y3oophkj (lead time 8 weeks or longer).

*Fourth*, the pursuit of relief depends on the support of individuals and institutions whom children do not control: Children are not financially or emotionally self-sufficient; they depend on the support of adult caregivers and on scarce free or low-cost resources for legal, medical, and social services.  Even if emotionally ready to pursue relief, a child may be unable to influence adults or institutions on whom progress depends.

Any or all of these factors will mean that a child's progress toward relief may depend on postponing a final hearing through administrative closure; or upon an opportunity to offer additional evidence on remand after an appeal is taken; or upon the reopening of proceedings, even if some procedural requirements are not met.  The Rule will vitiate all of these possibilities.

## II.    A REGULATORY BAR TO ADMINISTRATIVE CLOSURE DISCOURAGES ADJUDICATORS FROM AFFORDING CHILDREN TIME TO OBTAIN RELIEF

By codifying a near-absolute proscription against administrative closure, the Rule will hamstring EOIR tribunals from controlling the pace of proceedings.  This inflexibility will inhibit children from establishing defenses to removal because, by statute, U.S. Citizenship and Immigration Services (USCIS) and not EOIR has initial or exclusive jurisdiction over most forms of relief available to children.

EOIR removal proceedings commence with a charge of removability, 8 U.S.C.§ 1229a(a), and conclude with an immigration judge's order of removal, termination, or other disposition, 8 C.F.R. § 1240.12(c).  During proceedings, a respondent may demonstrate "that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion," *id.* § 1240.8(d), warranting dismissal of proceedings and often leading to permanent lawful status.  But preparing applications for relief and USCIS' adjudication of those applications takes time, some of it entirely out of the applicant's hands.   Immigration judges previously utilized administrative closure as an efficient tool to accommodate those out-of-court processes.  By eliminating that tool, the Rule prompts judges to reach a final adjudication on removability before a child's defense is prepared – potentially resulting in a removal order for a child for whom Congress provided a path to lawful status.

### A.    Congress Conferred On USCIS Jurisdiction Over Most Forms Of Relief For Children

Congress has granted exclusive or initial jurisdiction over most immigration benefits, including those most relevant for unaccompanied children, to USCIS, which is part of the Department of Homeland Security (DHS).  6 U.S.C. § 271(b).  By contrast, immigration judges adjudicate a finite set of relief applications.  8 C.F.R. § 1240.1(a)(1)(ii).  Accordingly, a child will generally request that removal proceedings continue while relief applications are pending out of court, and the child's ability to obtain lawful status for which he or she is eligible may depend on the ability to defer a final disposition of the removal proceedings while pursuing that out-of-court relief.[2]

Timelines for obtaining relief are driven by multiple factors outside a child's control.  As outlined above, some relate to trauma and to children's capacity limitations; still others relate to adjudication processes.  For example, the process of establishing eligibility for SIJ status requires the expertise of state juvenile courts to make determinations relating to parental maltreatment and the child's best interests.  8 U.S.C. § 1101(a)(27)(J)(i)–(ii); *see also* DOJ Final Rule, Special Immigrant Juvenile Status, 58 Fed. Reg. 42,843, 42,847 (Aug. 12, 1993) ("[T]he decision concerning the best interest of the child may only be made by the juvenile court or in administrative proceedings authorized or recognized by the juvenile court . . . .").

State court proceedings that establish the prerequisites for SIJ status vary in duration for many reasons: they may entail waiting periods before commencement, as well as for available hearing dates.  The time required for notice to adverse parties and for investigations can also vary among state courts.  *See, e.g.*, *In re Cristel Esperanza Melendez-Melendez*, File No. AXXX XX9 189, 2017 WL 1508928, at *1-2 (BIA Mar. 15, 2017) (child had difficulty locating her father in Honduras to effectuate service pursuant to state requirements).  Moreover, all of this presumes that an appropriate caregiver for the child is available and willing to commence the state court process.

---

[2]   The Attorney General recognized this need for postponements while pursuing relief out of court in elaborating the "good cause" standard for granting continuances – which, distinct from administrative closure, fix a date certain for the next immigration court hearing.  *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 413 (A.G. 2018).

Finally, articulating past harms inflicted by parents requires that a child establish trust in his or her counsel and other support systems.

After a child obtains a predicate state court order, USCIS may use all of, or even exceed, the statutorily allotted 180 days for adjudicating a SIJ petition. *See* 8 U.S.C. § 1232(d)(2). And a special immigrant juvenile otherwise eligible to adjust to lawful permanent resident status may face a years-long wait to apply, due to annual per-country and per-category visa caps.[3] For these and other reasons, the time for adjudicating a SIJ petition is difficult to predict and outside the control of the child *and of the immigration court*, making administrative closure the ideal tool for managing the flow of proceedings during the SIJ process.

Similarly, immigration judges have effectively deployed administrative closure while USCIS exercised its statutory initial jurisdiction over asylum applications filed by unaccompanied children during removal proceedings. *Id.* § 1158(b)(3)(C); *see also* USCIS, *Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children* at 2 (Mar. 25, 2009), https://tinyurl.com/yy45vs9m (noting use of continuances, administrative closure, or termination). In those cases, the time for scheduling an interview and issuing a decision is determined by adjudicators at USCIS. For both SIJ status and asylum, the application for relief requires no action by EOIR while pending before USCIS; nor can EOIR require USCIS to adjudicate on the immigration court's schedule.

### B. Administrative Closure Has Allowed Immigration Judges To Avoid Unnecessary Hearings While Awaiting USCIS' Adjudications

Administrative closure allowed immigration judges to conserve resources for cases needing active attention, while honoring Congress's decision to afford unaccompanied children avenues to relief that proceed outside court. Abolishing administrative closure without accounting for the effects on children and other vulnerable respondents, and for the added demands on their advocates to manage active proceedings, is arbitrary and capricious.[4]

---

[3]  For children from El Salvador, Guatemala, and Honduras, visas are currently available to those who petitioned for SIJ before April 15, 2018. *See* U.S. Dep't of State, *Visa Bulletin for February 2021*, https://tinyurl.com/k0odxejk.

[4]  As Plaintiffs explain, *see* Complaint, ECF No. 1 at 66-69, the Attorney General mistakenly concluded that most uses of administrative closure undermine efficiency and are inconsistent with

Several organizations, including KIND, raised concerns about the effects of eliminating administrative closure on unaccompanied children and others pursuing relief administered outside of EOIR. *See* KIND Comment, EOIR Dckt. No. 19-0022, at 10-15 (Sept. 25, 2020), https://tinyurl.com/1tp7f214; *see also* Young Ctr. for Immigrant Children's Rights Comment, EOIR Dckt. No. 19-0022, at 2-12 (Sept. 25, 2020), https://tinyurl.com/2bwhlcd5; HIAS Comment, EOIR Dckt. No. 19-0022, at 3-4 (Sept. 25, 2020), https://tinyurl.com/2hlnhsew; Make the Road New York Comment, EOIR Dckt. No.19-0022, at 4-6 (Sept. 25, 2020), https:// tinyurl.com/2bpffwgs. Yet, EOIR never addresses those considerations head-on, instead emphasizing only "efficient adjudication" and rejecting "indefinite" delay for the pursuit of "speculative relief." 85 Fed. Reg. at 81,598. But those statements are not responsive to concerns that EOIR's approach nullifies avenues that Congress provided for potential relief, by arbitrarily stopping the clock and allowing the deportation of unaccompanied children before USCIS has an opportunity to adjudicate their applications.

Nor do other rationales hold water. EOIR repeatedly notes that administrative closure prevents prompt adjudication. *See, e.g.*, 85 Fed. Reg. at 81,599. But it does not contend, indeed it cannot, that administrative closure prevents immigration judges from adjudicating other cases; there is an infamously large backlog to which any immigration judge could turn his or her attention while waiting for a child's case to be ripe. Earlier BIA precedent stated that "administrative closure may be appropriate to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (BIA 2012), *overruled by Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018). To focus instead on "promptly mov[ing] cases to completion," 85 Fed. Reg. at 81,598, is to value the completion of

---

existing regulations, *Matter of Castro-Tum*, 27 I. & N. Dec. 271, 292–93 (A.G. 2018). As the Fourth and Seventh Circuits have held, these conclusions were erroneous. *Zuniga Romero v. Barr*, 937 F.3d 282, 287-297 (4th Cir. 2019); *Meza Morales v. Barr*, 973 F.3d 656, 664-67 (7th Cir. 2020). *But see Hernandez-Serrano v. Barr*, 981 F.3d 459, 466 (6th Cir. 2020) (approving *Castro-Tum*)). But even apart from this, it would be arbitrary for EOIR not to have considered revising the regulation to more expressly permit administrative closure, in light of its role in preserving access to forms of immigration relief adjudicated outside immigration court.

removal proceedings at the expense of adjudications of relief applications, a tradeoff of enforcement over protection that Congress nowhere empowered EOIR to make.

The eradication of administrative closure cannot be compensated for by immigration judges' other case management tools.[5] The Rule eliminating administrative closure appears on the heels of increased scrutiny of requests to continue or terminate immigration court proceedings. *Matter of L-A-B-R-*, 27 I. & N. Dec. 405 (A.G. 2018); *Matter of S-O-G- & F-D-B-*, 27 I. & N. Dec. 462, 463 (A.G. 2018). It is far from clear that immigration judges will now grant multiple continuances, given the Attorney General's directive to consider "administrative efficiency." *L-A-B-R-*, 27 I. & N. Dec. at 416; *see also* EOIR, *Update of Guidance on Continuances in Immigration Proceedings*, Policy Memo 21-13 at 2 (Jan. 8, 2021), https://tinyurl.com/y5964qa8 ("EOIR has no policy mandating or requiring Immigration Judges to grant a continuance for any reason in any particular case or circumstance, except where a continuance is required by binding law.").

Even where available, serial continuances – each requiring a motion, and generally requiring attendance at in-person hearings before an immigration judge – are inefficient for the court and burdensome for children, their caregivers, and their advocates – all with no substantive gain. As EOIR itself has recognized, repeated appearances in court can have serious negative effects on children. *See* EOIR, *Guidelines for Immigration Court Cases Involving Juveniles, Including Unaccompanied Alien Children*, Operating Policies & Procedures Memo. 17-03 at 6 (Dec. 20, 2017), https://tinyurl.com/y2vzc7bj ("EOIR Guidelines") ("[S]tress and fatigue can adversely impact the ability of a younger child to participate in his or her removal proceedings. Therefore, where appropriate, immigration judges should seek . . . to limit the number of times that children must be brought to court[.]"). For children pursuing SIJ status, for example, these unproductive immigration court hearings are layered on top of state court processes, with each

---

[5]   A policy memorandum authorizes immigration judges to move specified types of cases from the main docket to a "status docket" "to address all cases in the most efficient manner." EOIR, *Use of Status Dockets*, Policy Memo. 19-13 at 1 (Aug. 16, 2019), https://tinyurl.com/yymkoqu. But not all immigration courts have status dockets, and EOIR's rulemaking never explained how status dockets would be "most efficient" as compared with administrative closure.

appearance requiring a child to miss school and a caregiver to miss work. And, on each occasion, the child faces the uncertainty of whether he or she will secure another continuance or face removal.

## III. RESTRICTIONS ON REMAND, REOPENING, AND THE INTRODUCTION OF NEW EVIDENCE ELIMINATE CORRECTIVE MECHANISMS ON WHICH CHILDREN RELY

Several provisions of the Rule relating to motions to remand or reopen will make it nearly impossible for adjudicators to consider new evidence or newly established eligibility for relief once an immigration judge has denied a child relief in the first instance. This means that some children who are in fact demonstrably eligible for relief, but for reasons relating to their capacity limitations or otherwise outside their control did not successfully establish that eligibility in the first instance, will be left without recourse. Although EOIR acknowledged that commenters raised concerns with the Proposed Rule's timing and remand provisions, the agency states that it was unable to discern the commenters' rationales or any deleterious effect specific to unaccompanied children. 85 Fed. Reg. at 81,623-24, 81,628-29. But comments (KIND's among them) explained the concerns concretely. By treating child respondents merely as respondents and not as children, the Rule arbitrarily overlooks critical considerations.

### A. Children Face Unique Challenges In Navigating Removal Proceedings, Which May Inhibit Their Presentation Of Evidence And Result In Removal Orders Even Where Meritorious Claims Are Available

As noted, the adversarial immigration process was largely "designed for adults." 154 Cong. Rec. 24,565. Children, who are unfamiliar with court systems, judicial expectations, and advocacy norms, nonetheless face a professional prosecutor. Yet children are not guaranteed counsel in immigration proceedings. For children proceeding *pro se* through immigration court, the outcomes speak for themselves: during a recent 18-month period, "immigration judges were 70 times more likely to grant relief to unaccompanied children with representation than to those without it[.]" KIND, *KIND Blueprint: Concrete Steps to Protect Unaccompanied Children on the Move* at 7 (2020), https://tinyurl.com/y2axyckn ("At present, more than half of unaccompanied children lack representation."). That statistic demonstrates many unaccompanied children have

viable paths to potential relief but are not equipped to successfully navigate our immigration system on their own.

Even for children who receive representation, participating in their proceedings poses many challenges, some exacerbated by developmental limitations, past trauma, and other factors as discussed above. Recounting traumatic experiences underlying a relief application – to counsel during preparation, or in open court – requires time for a child to process those experiences and feel comfortable sharing them. As EOIR recognizes, in particular, "[y]oung children may be reluctant to testify about painful or embarrassing incidents[.]" EOIR Guidelines at 5-6.

Unfortunately, time is a luxury that many children moving through removal proceedings do not have, owing to recent regulatory revisions and interpretations. Of particular concern, efforts to reduce the statutory access of unaccompanied children to the non-adversarial asylum process may force many children who reunite with a parent or reach age 18 to forego an Asylum Office interview, and further may subject them to the one-year filing deadline from which unaccompanied children are exempt. *See Matter of M-A-C-O-*, 27 I. & N. Dec. 477, 480 (BIA 2018). Recent EOIR guidance has also encouraged immigration judges to issue scheduling orders setting short deadlines for applications for relief. EOIR, *Enhanced Case Flow Processing in Removal Proceedings*, Policy Memo. 21-05 at 3 (Nov. 30, 2020), https://tinyurl.com/y3g5nspx ("EOIR Case Flow Memo"). As a result of these additional constraints EOIR has chosen to impose, if a court prematurely proceeds on the merits of a child's case, it may not have afforded adequate chance for preparing written materials and testimonial evidence to fully reflect the strength of the child's claim for relief.

**B.    Due Process Demands Accommodations For Children Navigating Adversarial Removal Proceedings.**

It is not unusual for a child found ineligible for relief and ordered removed to later become able to demonstrate eligibility for relief, on the same or different grounds, were it not for the intervening removal order. In the case of a child who timely appeals to the BIA after asylum is denied based on insufficient factual support for one of the claim's elements – for example, whether the harm described rose to the level of persecution, or was connected to one of the protected

grounds for granting asylum – at least three distinct circumstances could warrant the use of flexible procedures to provide an opportunity for the child to qualify for protection.

*First*, children of varying ages and circumstances may disclose or obtain additional relevant and material evidence at a late stage of proceedings, even *after* appeal; the additional evidence may also suggest a theory of relief not previously developed. In some cases, the evidence in question will have been previously unavailable to the child; in others, the child's reticence to offer it may have stemmed from trauma, simple misapprehension as to what information is relevant and necessary, or other reasons.

*Second*, gaps in the record in a child's case could result from time pressures exerted by EOIR rules and policies, such as prioritizing case completion goals, or encouraging scheduling orders that deem applications for relief waived if not filed within a short period. *See* EOIR Case Flow Memo at 4 n.9. In October 2018, EOIR instituted performance metrics that require immigration judges to adjudicate 700 cases per year. *See* EOIR, Performance Plan, Adjudicative Employees, https://tinyurl.com/11mn2o3k. In the same spirit, but for an injunction, another new rule[6] would have required immigration judges to complete asylum adjudications, including for children, within 180 days of filing, *see* Order, *Nat'l Immigrant Just. Ctr. v. Exec. Office for Immigr. Rev.*, No. 21-cv-00056-RBW (D.D.C. Jan. 14, 2021); however, wait times for and completion of *pro bono* psychological or medical evaluations routinely absorb a significant portion of that time, and evidence from experts or from witnesses outside the U.S. (who may themselves be in harm's way) are also difficult to obtain in that time frame.

*Third*, a new basis for relief may have developed while the asylum adjudication was occurring. For instance, the child may have been granted SIJ status after completing a lengthy state court process or may have qualified for a U or T visa. Under the Rule, it will be difficult or impossible for children in any of these circumstances to overcome the prior removal order and access available relief.

---

[6]   *See* Procedures for Asylum and Withholding of Removal, 85 Fed. Reg. 81,698, 81,750 (Dec. 16, 2020) (requiring adjudication of asylum cases within 180 days).

### C.    The Rule Dismantles Certain Minimal Due Process Safeguards For Children Contesting A Denial Of Relief

The Rule impairs corrective measures for children in circumstances like those described above in several ways.  First, after underscoring that the BIA may not receive new evidence on appeal, the Rule overrides a former regulation providing that: "A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand.  If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge."  Former 8 C.F.R. § 1003.1(d)(3)(iv).  This option is replaced with a near-total prohibition against remand, *sua sponte* or on motion, for the purpose of considering new evidence.  This prohibition sweeps in cases where evidence was not adduced previously due to limitations or burdens particular to children.  EOIR's stated aims of "more uniform treatment of new evidence" and "encouraging the presentation of all available and probative evidence at the trial level," 85 Fed. Reg. 81,612, espouse an inflexible approach that is unworkable for children's cases.  And denying the opportunity to supplement the record through remand limits the quality of any later judicial review, which will be limited to the administrative record, 8 U.S.C. § 1252(b)(4), potentially resulting in a directed remand at that stage.

Exceptions to the prohibitions against remand are strictly limited.  One exception is a multipart test that would be met only in rarefied circumstances.  85 Fed. Reg. 81,651.  This test requires, *inter alia*, that the issue must have been preserved and the proponent of the evidence must have sought to offer it below – factors that will not be present where a child lacked access to the evidence or was inhibited from offering it for reasons such as those outlined above.  This exception also requires determinations that the new evidence would be both non-cumulative and outcome-determinative, factors that force the BIA into an in-depth analysis of new evidence, the very analysis from which the efficiency-driven Rule purports to shield it.  *Id.*  The Rule also authorizes remand to examine "an issue of jurisdiction over an application or the proceedings," *id.* at 81,652, a provision that could undermine finality by empowering DHS to bring post-appeal challenges to USCIS' statutory initial jurisdiction over an unaccompanied child's asylum claim,

for example, based on after-the-fact documentation that a child had reunified with a parent or legal guardian before filing his or her application.  *Id.* at 81,590.

EOIR disputes the impact of the new remand restrictions by pointing to the availability of motions to reopen, a vehicle defined by statute, whereas remand is a creature of regulations.  *Id.* at 81,611.  A motion to reopen plays an essential role in fair process, but it is a different tool for circumstances distinct from those warranting remand.  One key distinction is that reliance on motions to reopen would delay the redress of the issue until after the BIA disposes of the appeal (*see id.* at 81,611 n.37), effectively forcing a child to choose between a motion to reopen and a petition for circuit court review of the BIA's decision, *see* 8 U.S.C. § 1252(b)(1).  Moreover, motions to reopen are governed by their own exacting standards.  *See id.* § 1229a(b)(5)(C) (orders issued in absentia), (b)(7) (other orders).  Indeed, for the entire process before the immigration judge and the BIA, a respondent is limited to a single motion to reopen, filed within 90 days[7] of the entry of a final order of removal on the merits.  *Id.* § 1229a(c)(7)(A), (C).  With remand off the table, this will force a child who is ordered removed despite demonstrable eligibility for both SIJ status and asylum to choose between an immediate motion to reopen for consideration of new asylum-related evidence and a later motion to reopen in order to adjust status based on SIJ status.

Furthermore, the Rule strips immigration judges and the BIA of authority to reopen proceedings *sua sponte*, 8 C.F.R. § 1003.2(a), 1003.23(b)(1), authority that was not subject to the timing and numerical limitations governing respondents' motions.  Such *sua sponte* authority provided an important safety valve, even though its use in practice was limited to exceptional situations, *see Matter of J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997).  But the Rule targets such *sua sponte* action as compensating for situations in which motions would be "procedurally improper." 85 Fed. Reg. 81,628.

EOIR's response to public comments reflects only a superficial consideration of how the Rule is likely to affect children.  For instance, EOIR concluded that because the Rule's provisions that significantly shorten briefing timelines "are not case-specific and do not depend on the facts

---

[7]    180 days, if the order issued *in absentia*.  *Id.* § 1229a(b)(5)(C).

14

of any particular case . . . there is no basis to believe that the rule will apply differently to children or survivors of violence." *Id.* at 81,624.[8]  This rationale is at odds with the premise that basic accommodations are needed to make immigration proceedings fundamentally fair for children, as EOIR affirmed in its latest update of policy guidance directing special consideration toward children in immigration court.  EOIR Guidelines at 2 ("Immigration cases involving children are complicated and implicate sensitive issues beyond those encountered in adult cases.").  Similarly, with regard to the elimination of *sua sponte* reopening, EOIR emphasized that it had not identified "any specific impacts of the rule on [unaccompanied alien children] in particular—as distinguished from other categories of aliens." 85 Fed. Reg. 81,628.  But public comments outlined many factors that make procedural adjustments necessary if unaccompanied children are to receive due process.

For instance:

> Trauma and its effects do not follow a precise timeline, and critical details and information regarding a child's protection needs may emerge over time, including even after a case has been adjudicated or is on appeal.  *Sua sponte* reopening serves as a vital procedural safeguard in such cases, ensuring that a child's protection needs will not be disregarded were a motion to be otherwise deemed untimely or in excess of the numerical limits.  Reopening outside of those regulatory limits may also be necessary in cases in which ineffective assistance of counsel or a child's *pro* se appearance before the immigration court impeded the full presentation of a child's case for protection.

KIND Comment at 6 (internal citation omitted).  And as explained above, owing to a variety of factors beyond a child's control, evidence needed to support an essential element of a child's claim for relief may be omitted from the record on appeal, or may have been inaccessible or unknown to the child at the time the record was closed.  The BIA cannot address a child's meritorious claim without flexible tools that can respond to a variety of postures and circumstances, and it is precisely these flexible tools that the Rule takes away.

Congress commanded that agencies adjudicating claims for relief by unaccompanied children do so under regulations that "take into account the specialized needs of unaccompanied alien children," 8 U.S.C. § 1232(d)(8).  EOIR has not satisfied that requirement.  To the contrary,

---

[8]   EOIR asserted that commenters concerned that the timelines would particularly impact children and other vulnerable individuals "did not explain how or why that would be the case," *id.*, even though comments by KIND explained that many children (who are not financially independent) have difficulty obtaining counsel for an appeal, and may need additional time for briefing the complex or novel arguments their cases raise, KIND Comment at 4-6.

it has adopted a Rule that operates to the disadvantage of all children (unaccompanied or otherwise), and deflects criticism to that effect by saying that the Rule treats all respondents alike – an admission that it fails under the statutory requirement.  The Rule cannot be validly applied to unaccompanied children and should be stayed and/or enjoined.

## CONCLUSION

Plaintiffs' motion to stay and/or enjoin the Rule should be granted.


Dated: February 8, 2021                    Respectfully submitted,


                                           _/s/ J. Christian Word_____
Scott Shuchart (D.C. Bar No.: 1531377)     J. Christian Word (D.C. Bar No.: 461346)
KIDS IN NEED OF DEFENSE                     LATHAM & WATKINS LLP
1201 L Street, NW, Floor 2                  555 Eleventh Street, NW
Washington, DC  20005                       Suite 1000
                                            Washington, DC  20004
                                            (202) 637-2200
                                            christian.word@lw.com


Counsel for *Amicus Curiae* Kids in Need of Defense