<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3   Catholic Legal Immigration       )
     Network, Inc., et al.,           ) Civil Action
 4                                     ) No. 21-cv-94
                    Plaintiffs,        )
 5                                     ) TELEPHONIC
     vs.                               ) MOTIONS HEARING
 6                                     )
     Executive Office for             ) Washington, DC
 7   Immigration Review, et al.,      ) March 4, 2021
                                       ) Time:  3:00 p.m.
 8                    Defendants.      )
     _____
 9

10                TRANSCRIPT OF MOTIONS HEARING
                          HELD BEFORE
11           THE HONORABLE JUDGE RICHARD J. LEON
                  UNITED STATES DISTRICT JUDGE
12   _____

                     A P P E A R A N C E S
13

14   For the Plaintiffs:     Keren Hart Zwick
                             National Immigrant Justice Center
15                           224 S. Michigan Avenue, Suite 600
                             Chicago, IL  60604
16                           (312)660-1370
                             Email:  Kzwick@heartlandalliance.org
17
     For the Defendants:     Christina Greer
18                           U.S. Dept. of Justice, Civil Division
                             Office of Immigration Litigation
19                           P.O. Box 878, Ben Franklin Station
                             Washington, DC  20044
20                           (202)598-8770
                             Email:  Christina.p.greer@usdoj.gov
21
                             April Seabrook
22                           U.S. Attorney's Office for D.C.
                             555 Fourth Street, NW
23                           Washington, DC  20530
                             (202)252-2525
24                           Email:  April.seabrook@usdoj.gov

25
</pre>

1    Court Reporter:                Janice E. Dickman, RMR, CRR, CRC
                                    Official Court Reporter
2                                   United States Courthouse, Room 6523
                                    333 Constitution Avenue, NW
3                                   Washington, DC  20001
                                    202-354-3267
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  Hello.  Judge Leon here.

 2              THE COURTROOM DEPUTY:  This is civil action 21-94,

 3    Catholic Legal Immigration Network, Inc., et al., versus

 4    Executive Office for Immigration Review, et al.

 5              Counsel, please introduce yourself for the record,

 6    starting with the plaintiff.

 7              MS. ZWICK:  Good afternoon, Your Honor.  My name is

 8    Keren Zwick, K-E-R-E-N, Zwick, Z-W-I-C-K, for the plaintiff.

 9              THE COURT:  Welcome.

10              MS. GREER:  Good afternoon, Your Honor.  This is

11    Christina Greer, C-H-R-I-S-T-I-N-A, Greer, G-R-E-E-R, counsel

12    for the defendant.

13              THE COURT:  What company are you from?  Or what

14    entity are you from?

15              MS. GREER:  From the Department of Justice, Civil

16    Division, Office of Immigration Litigation.

17              THE COURT:  All right.

18              MS. SEABROOK:  Good afternoon, Your Honor.  This is

19    April Seabrook.  I am from the U.S. Attorney's Office, on

20    behalf of defendants.

21              THE COURT:  U.S. Attorney's Office in D.C.?

22              MS. SEABROOK:  Yes, sir.

23              THE COURT:  All right.  Anybody else?

24              THE COURTROOM DEPUTY:  No.  That's it, Your Honor.

25              THE COURT:  Okay.  Very good.  All right.
```

1          Counsel, we're here for the PI argument.  Each side

2     can have a half an hour.  The plaintiffs, the moving side, can

3     reserve up to ten minutes of that half hour.  So, you can

4     decide -- Ms. Zwick, I presume you're presenting the argument

5     for the plaintiff, is that correct?

6          MS. ZWICK:  Yes, sir, I am.

7          THE COURT:  You can reserve up to ten minutes of that

8     half hour, if you would like, for rebuttal.  All right?

9          MS. ZWICK:  Okay.  Your Honor.  Yes.

10         THE COURT:  All right.

11         MS. ZWICK:  I will reserve -- why don't I reserve

12    five minutes?

13         THE COURT:  Five.  Okay, very good.  You may start.

14         MS. ZWICK:  With that, Your Honor, would you like --

15    okay.  Thank you, Your Honor.

16         Good afternoon.  Again, Keren Zwick on behalf of the

17    plaintiff nonprofit organizations whose collective mission is

18    to provide legal services to immigrants in removal proceedings

19    to the maximum degree possible.

20         Plaintiffs ask this Court to enjoin or stay a rule

21    issued at the eleventh hour, in the midst of a whirlwind of

22    other rulemaking.  It's a rule that --

23         THE COURT:  Let me -- Ms. Zwick, let me start there.

24    Let me ask you to stop there and answer this question:  What is

25    the agreed upon, if there is one, status between the plaintiffs

1    and the defendants with regard to whether this new rule is

2    going into effect right now, or is it being held in abeyance

3    pending the outcome of this litigation?

4          MS. ZWICK:  Your Honor, the rule is in effect right

5    now.  And I think there is no agreed-upon status between the

6    parties as to that.  We're asking the Court to enjoin the rule

7    going forward, effectively.

8          I will note, however, that when it comes to the

9    question of whether or not this is a mandatory injunction or

10   not, I think that the party -- the issue is a little bit deeper

11   than that because plaintiff -- plaintiff's position is that we

12   are the ones who are asking for the Court to maintain the

13   status quo.  And the reason for that is because, first of all,

14   the case law says that the status quo generally refers to the

15   last status before the dispute in issue.  So, i.e., the status

16   before the rule.

17         And second of all, as a factual matter, because this

18   rule is largely prospective, what we're asking for is

19   significantly less disruptive than what the government is

20   asking for because the majority of cases pending before the

21   Board of Immigration Appeals, are about 85,000 in total, are

22   subject to the old rules and only cases that were recently

23   filed, i.e., after the effective date, would be subject to the

24   new rule.

25         So it's our position that what we're asking for,

1    again, is much less disruptive to the status quo than what the

2    plaintiffs (sic) are asking for, with respect to your question

3    regarding the status of the case.

4              THE COURT:  So it's your impression -- and correct me

5    if I'm wrong.  I'll give Ms. Greer a chance to answer this when

6    she gets her turn to speak.  It's your impression that the

7    government wishes to move forward with all of these changes,

8    which are manifold and substantive, while this litigation is

9    pending, with the possibility that if they were to lose, they

10   would have to go back to the old rule and restart with all the

11   cases that were filed while this litigation was going on?

12   That's your impression?

13             MS. ZWICK:  Your Honor, that is our impression.

14   Obviously, there was an executive order that the administration

15   put out the day after we filed our motion, indicating that the

16   agency -- instructing the agencies to engage in a review of

17   rules with respect to the fairness of the rules.  And we have

18   been in communication with the government about that executive

19   order and, yet, here we are.

20             THE COURT:  Does that order require the Department of

21   Justice, as far as you know, to engage in a review of these

22   rules to determine whether they're fair or not?

23             MS. ZWICK:  It doesn't name this rule in particular,

24   no, but the executive order does instruct the agency to

25   undertake a review of any order affecting the procedural

1    fairness of the rule proceedings, which we think this rule is

2    one massive one.

3           THE COURT:  But you haven't been given any

4    indication -- Ms. Greer will get a chance to let me know if

5    it's true or not -- you haven't been given any indication that

6    the Department of Justice is engaging in that kind of review of

7    these rules to determine whether or not they're sufficiently

8    fair as to warrant their being put into action?

9           MS. ZWICK:  I think, as of now -- and again, I think

10   Ms. Greer in a better position to answer this -- but as of now,

11   the answer to that is yes, it's not happening so far.  I don't

12   know that that means that they are not willing to do it or that

13   they're not interested in it.  I recognize, of course, that

14   there's been a lot of changes in staffing at the Department of

15   Justice, so there might be some need for them to address this

16   via those channels.

17          THE COURT:  All right.  As far as your arguments, and

18   recognizing the questions, the time you're allotted and the

19   other side is allotted, you don't have to spend any time

20   arguing on standing.  As far as I'm concerned, there is

21   standing.  But go ahead.

22          MS. ZWICK:  Okay.  Great.  Your Honor, may I ask if

23   you also would like to hear anything about jurisdiction?  I can

24   provide some information, in short, but I'm also happy to rest

25   on our papers on that.

1          THE COURT:  I think that's not going to be an issue

2    here, frankly.

3          MS. ZWICK:  Okay.  In that case, Your Honor, I'm

4    going skip ahead to the merits.  And before I do that, however,

5    I will say, I think that there are a few things to keep in

6    mind, as the Court is keeping this case in its mind, that

7    relate to the rule on the whole.  First is that this case --

8    when the agency issued this rule, it wasn't writing on a blank

9    slate.  To the contrary, this rule is representative of more

10   than 40 years, including, in fact, decades of immigration court

11   practice and requests a dramatic change in course.

12          Second, the rule contains dozen of examples of

13   arbitrary and capricious rulemaking; they proffer conclusionary

14   statements in response to significant comments, the complete

15   failure to consider important aspects or issues of the case, to

16   faulty math and logic and to inconsistent reasoning.

17          And third, when considering the context of a global

18   pandemic and a slew of other agency rulemaking, the staggered

19   nature of this rulemaking, accompanied by the 30-day timeline,

20   is insufficient.  I'm highlighting these things at the outset

21   because as I turn to the merits, I would like to begin with the

22   arbitrary and capricious rulemaking because I do think that

23   that illustrates overarching problems that plaintiff has with

24   this new rule.

25          THE COURT:  All right.  Go ahead.

1          MS. ZWICK:  Right.  So on the -- in the first

2     instance, the government -- the government's primary

3     justification for the rule is efficiency, yet there are

4     numerous examples of ways in which the rule does not actually

5     advance efficiency.  Take, for example, the elimination of

6     administrative closure.  Administrative closure is an important

7     tool in the immigration system because Congress has created a

8     two-track system before immigration remedies are pursued

9     affirmatively before the U.S. -- United States Citizenship and

10    Immigration Services, while others are pursued defensively in

11    the rulemaking proceeding.

12          And if you know any of this, Your Honor, if you would

13    like me to sort of gloss over it, I'm happy to do so.  I know

14    that this is a lot of technical stuff in it, so I want to make

15    sure to not leave anything out.

16          But, the bottom line is, in some cases, Your Honor,

17    there are cases pending before USCIS that will eliminate, once

18    they're adjudicated, will eliminate the need for the ground of

19    removability.  And in those cases administrative closure acts

20    as an important device for immigration judges to manage their

21    busy dockets, to eliminate cases where their adjudication may

22    not be necessary mor where their adjudication will become

23    significantly more streamlined following the rules of USCIS.

24          The rule outright eliminates this efficiency tool,

25    despite the fact that plaintiff, commenters, immigration judges

1    and, importantly, the Department of Justice's own consultant

2    has recommended expanding, not curtailing, the use of

3    administrative closure.

4         The rule makes no mention of the study by Booz Allen

5    Hamilton that made that recommendation and the government's

6    post hoc rationalizations of why that may not be true can't be

7    considered for purposes of an APA analysis.  The rule statement

8    that admin closure is tantamount to failure to enforce the

9    immigration laws is also untrue because by definition the vast

10   majority of individuals who would qualify for administrative

11   closure are seeking that relief based on the pendency of

12   another case before another immigration entity.

13        So, too, both the curtailing of remand authority,

14   that's another example of a way in which the rule purports to

15   advance efficiency, but in fact does not.  Allowing motions to

16   remand is an exercise in efficiency because it allows

17   immigration -- immigrants to present new material evidence that

18   was previously unavailable prior to the adjudication of their

19   case before the Board of Immigration Appeals.

20        That means that instead of waiting for -- instead of

21   waiting for their case to be over and filing a motion to

22   reopen, that's the primary difference between the two.  Doing

23   so in advance would allow the agency to avoid potentially

24   ruling on the merits of the appeal and, instead, ruling only on

25   the motion to remand or ruling only on the merits and not on

1    the motion to remand.  But the bottom line is in the existing

2    system the -- those two things are generally adjudicated

3    together.

4              Now the government concedes -- their justification of

5    the rule to get around the challenges regarding the ability to

6    present evidence that flow from this is to say that the

7    noncitizens will still have the right to present this evidence,

8    they just must do it through a motion to reopen.

9              But that's -- but if you take the rule at its face,

10   that's an indication that the agency knows that it would have

11   to touch the case twice and not once, it -- and that is not an

12   exercise in efficiency.  In other words --

13             THE COURT:  How do they file a motion to reopen if

14   they've been deported as a result of losing due to a lack of

15   evidence that they weren't able to present?

16             MS. ZWICK:  Exactly right, Your Honor.  What's really

17   going on here is that by eliminating motions to remand, they're

18   eliminating the ability for individuals to seek -- to present

19   the evidence presented outright, which is contrary -- which is

20   a contrary-to-law pled issue that makes the rule contrary to

21   law under 8 U.S.C. 1229a.

22             The delegation to the EOIR director is yet another

23   example of a lack of efficiency.  The agency -- the rules

24   simultaneously states that the director would only review,

25   quote, a narrow subset of the cases before an agency while

1     indicating that cases shall, quote, be sent to the director

2     after they've been pending for 335 days except in a very narrow

3     set of circumstances.

4             These statements are inconsistent because the rule

5     itself acknowledges that nearly half of all cases pending

6     before the Board of Immigration Appeals has been pending for

7     that 335-day duration.  The rules also fail to explain how it

8     could be more efficient to reassign the case midstream and to

9     do so to a person who has numerous other responsibilities that

10    fall far outside the scope of adjudicating appeal.

11            Another example of arbitrary and capriciousness in

12    the rule, Your Honor, is the IJ quality certification process.

13    This is also not an exercise in efficiency because it allows --

14    it converts immigration judges into advocates for their

15    position and allows them the ability to challenge any decision

16    by the Board that they disagree with.  That undermines goals of

17    efficiency and it also illustrates one of the ways in which the

18    rules is internally inconsistent.

19            And what do I mean by that?  With respect to the

20    inconsistency, the rule goes to certain lengths to eliminate

21    other things on the ground that they interfere with the

22    agency's role as a neutral arbitrator.  For example, the BIA

23    self-certification authority has been eliminated and remand

24    authority by the board has been curtailed on the purported

25    basis that those things interfere with neutrality.  All the

1    while the rule is allowing immigration judges to put on the hat

2    of an advocate, to advocate for their position by seeking

3    effectively what is an appeal of the BIA's decision to the

4    director.

5            In addition to these problems, the rule gave cursory

6    or non-answers to many important comments, including, for

7    example, many commenter comments about the impact it would have

8    on pro se litigants and the BIA pro bono project and the rule's

9    response to those problems is simply to state that they do not

10   exist.  But in doing so, again, the agency relied on faulty

11   data.

12           In particular, the rule incorrectly states that

13   86 percent of people who -- have been represented before the

14   BIA and, therefore, the impact on pro se litigants is

15   insignificant.  Now, there are a couple of problems with this

16   data point.

17           First, this is a data point this is collected at the

18   end of representation, i.e., when someone has already filed

19   their appeal, and the concern that individuals were raising was

20   the ability to mount an appeal, given this condensed timeline.

21   And second, that number is -- so, because the number is taken

22   from the end of the appeal period, it's inaccurate because it

23   should be closer to what the number of pro se litigants is at

24   the end of the IJ period.

25           So if you look at the number of pro se individuals at

1    the end of an IJ hearing, that's closer to 40 percent.  And

2    even -- but importantly, even if that number were correct, it's

3    a representation rate under the prior system, before the

4    condensing of this briefing schedule, before the additional

5    barriers that the rule puts into place.  So it's not really an

6    answer to say many people have counsel under the previously

7    existing system to suggest the new system will be fine.

8         Similarly -- in a similar vein, the rule's reliance

9    on from the existence of the BIA pro bono project is

10   insufficient as a fallback.  Importantly, Your Honor, CLINIC,

11   the lead plaintiff in this case, is the administrator of the

12   BIA pro bono project.  In its own comment, in CLINIC's own

13   comment they discuss their role in handling the BIA pro bono

14   project and complain that the rule, quote, disproportionally

15   harms pro se and detained respondents.  Other commenters went a

16   step farther, to suggest that the BIA pro bono project would be

17   fundamentally hampered in its ability to even exist under the

18   existing rules and, hence, CLINIC's declaration in this case,

19   which is at docket entry 9.2, puts that concern interest focus.

20        In other words Judge Mehta, another judge in this

21   court, had found the agency was presented with ample evidence

22   of concerns about the ways the rule would affect representation

23   rates from those who would know best, the people who do the

24   representation.  And instead of intergaging with those it

25   concerns, the rule simply said -- discounted their existence in

1    a conclusory statement.  That's not sufficient under the EPA.

2         THE COURT:  What percent of the final orders of

3    deportation that have come out of the BIA are appealed to

4    Federal Circuit Court?

5         MS. ZWICK:  I don't know the answer to that.  I don't

6    have that data point off the top of my head, Your Honor.  I

7    know that -- I would imagine that it's a fairly significant

8    number, but I don't know the -- I'm sorry that I don't know the

9    data.  I can look that up for you, if Your Honor would like.  I

10   know that the -- I do know that the representation rates for

11   the Board, the vast majority of people who have a decision from

12   the Board are denied.

13        THE COURT:  So in the end, there are final orders of

14   deportation principally coming out of the Board and those,

15   therefore, would be appealable to the respective Federal

16   Circuit Court, right?

17        MS. ZWICK:  In general, yes, that's true.

18        THE COURT:  Do you know if there's any appreciable

19   difference between appeals to Federal Circuit Courts from

20   decisions by the BIA by people who were pro se versus people

21   who were represented by the organizations like your own?

22        MS. ZWICK:  I can tell you, for the organization

23   where I worked before, I happen to know this data offhand, that

24   the success rate, our success rate as an agency is more than

25   double the success rate, the national average success rate when

1    it comes to -- whether IJ representation, BIA representation

2    and district court representation.

3              THE COURT:  All right.

4              MS. ZWICK:  There's also data -- it's a bit dated at

5    this point -- that on the national average individuals are

6    about five times more likely to prevail in their immigration

7    case if they have counsel.  That data is about a decade old

8    though, so I can't promise you it actually tracks with the

9    current.

10             THE COURT:  Okay.  Thank you.

11             MS. ZWICK:  Sure.

12             THE COURT:  Why don't you focus on the positions that

13   you believe are contrary to Congress's -- the law that Congress

14   has written.

15             MS. ZWICK:  Sure.  So I think when it comes to

16   contrary-to-law arguments, Your Honor, I think I'll start with

17   the 12 -- with the withholding of removal statute.  Section

18   1231(b)(3) instructs that the attorney general shall not remove

19   individuals once there has been a determination that they

20   are -- they face persecution or torture in their home country.

21   The rule, especially the biometrics provision that allowed for

22   individuals to have their cases advanced -- denied, basically

23   for abandonment, if they don't comply with the biometrics

24   requirement, effectively says that the BIA, even after having

25   granted someone, for example, protection -- mandatory

1    protection under the Convention against torture, can then deny

2    that relief on the basis of abandonment simply for failure to

3    complete a biometrics check.  The government's response to this

4    is biometrics checks have always been part of the system.  And,

5    of course, we don't dispute that the difference, however, has

6    been that people have received in-person warnings about the

7    failures if not complied and they have been given ample

8    opportunity to go through that with that process.

9         And under this rule, those -- all of those safeguards

10    are converted into a mail order process that would happen at

11    some unknown time at some unknown date, potentially years after

12    the person filed their application.  To say they didn't receive

13    a notice or if they didn't understand it or they were no longer

14    in touch with their lawyer, for example, they could very easy

15    miss their opportunity to comply with the biometrics

16    appointment, even after they have been granted mandatory

17    protection.

18         And I think also, Your Honor, it's worth noting that

19    the elimination of sua sponte reopening is also inconsistent

20    with Section 1231(b)(3).  Sua sponte reopening is an important

21    tool for use in the exceptional circumstances when the basis

22    for someone's claim comes to exist later on, either after a

23    previous motion to reopen or far after, many years after the

24    existence of a removal order.

25         The government, again -- the government's response to

1    that point is, well, there -- in fact, there's still statutory

2    reopening and that's sufficient.  But the government misses the

3    point that statutory reopening -- the statutory reopening

4    provision doesn't allow for reopening based on changed personal

5    circumstances, which are exactly the kind of extraordinary

6    circumstances for which sua sponte reopening would have been

7    used, nor does the statute -- excuse me, nor do they account

8    for the fact that the statute was written with the existence of

9    sua sponte reopening in mind.

10         There was a previous regulation in April of 1996,

11   about six months before IIRAIRA was passed in September of

12   1996, that relies on the existence of sua sponte reopening for

13   exceptional circumstances.  And I think it's important to

14   presume that Congress was aware of that when they crafted the

15   motion to reopen statute, to maintain consistencies with the --

16   in particular with the prohibition on removing people to

17   persecution or torture.  In addition, we think that the rule is

18   contrary to law in its provision of access to counsel and the

19   ability to present evidence.

20         On the access to counsel side, the rule -- by

21   shortening the amount of time that an individual has to file a

22   brief to the Board of Immigration Appeals, the rule curtails --

23   significantly impedes pro se individuals and us ability to

24   identify new counsel for purposes of launching an appeal, which

25   as we were assessing earlier, Your Honor, means that they will

1    have significantly less time to -- or, less likelihood of

2    success on the merits of their case.

3         The government's response to that is, effectively,

4    well, it's not very much time.  But that's actually -- that's

5    not true.  And the reason that's not true is because of the

6    way -- because of the way that the system for filing appeals

7    works with the Board.  Sure, it might be -- it might be not a

8    significant amount of time for a person who previously had

9    some, but for people who did not have previously have counsel

10   there's no meaningful ability for an individual lawyer to

11   assess a case in that posture while the appeal process is

12   pending.

13        In other words, one of the government's responses is

14   lawyers should just start working on the cases before the

15   briefing schedule starts.  But that's not possible because the

16   briefing schedule -- the transcripts of the case are the only

17   opportunity, in the majority of cases, for litigants to see the

18   decision of the immigration judge.  So in other words, a lawyer

19   can't really accept a case or even ascertain the merits of a

20   case until the briefing schedule issues because that's the

21   first opportunity that they would have to review the

22   immigration judge's decision.  And in addition, the clock -- so

23   the clock will already be going at that time and is already

24   shortened -- is already a significantly shortened clock.

25        I will also add that the government's response to

1    this particular problem, also, only further illustrates the

2    arbitrary and capricious nature of this rulemaking.  The

3    government is basically suggesting that the attorneys can

4    file -- accept a case knowing that they would be unable to meet

5    the deadline and file a brief late with a motion to accept it,

6    or file a motion for a supplemental briefing, which would be at

7    the Board's discretion.

8            In other words, the government's response to the

9    creation of this condensed timeline is to encourage immigration

10   attorneys to engage in what is, frankly, questionable ethical

11   practice.

12           As we already discussed to a degree, the ways in

13   which the motion to remand -- the elimination of motions to

14   remand illegally -- is contrary to the provision requiring --

15   requiring noncitizens reasonable opportunity to present

16   evidence just for the reason Your Honor mentioned, which is

17   that individuals, if they can't present the evidence while

18   their case is pending, they're likely to be deported before

19   they ever actually have a meaningful opportunity to present the

20   evidence, which is why the ability to present evidence via a

21   motion to remand is not only efficient, but also important as a

22   matter of law to preserve the right of noncitizens.

23           THE COURT:  Let me ask you this:  Spend a minute on

24   irreparable harm.  As you know, for a PI, irreparable harm is a

25   necessary element that you have the burden to demonstrate.

1          MS. ZWICK:  Of course.  Of course, Your Honor.

2          THE COURT:  The government doesn't believe you have

3     irreparable harm -- that you haven't adequately demonstrated

4     irreparable harm, applying the *Newby* standard, the D.C.

5     Circuit's 2016 opinion.  Why do you think you have?

6          MS. ZWICK:  Your Honor, I think the government -- I

7     think the plaintiffs are suffering irreparable harm --

8     irreparable, actual, ongoing harm right now.  And those harms

9     cannot be avoided, absent a stay or an injunction of the rule.

10    The government suggests that many of the harms that happen --

11    that come to plaintiff are speculative in nature.  But that's

12    not true.  And I'll point the Court to NIJC's supplemental

13    declaration, which is docket entry 36-2, as evidence of that.

14         There we explain that NIJC -- plaintiffs NIJC and

15    CLINIC are already in the midst of -- we're preparing practice

16    advisories -- practice advisory and training materials on the

17    impact of the rule.  That work is necessary to educate pro bono

18    attorneys, CLINIC affiliate organizations across the country,

19    and then eventually will be converted into use for pro se

20    litigants.  And that work has already resulted in the

21    expenditure of time, and the expenditure of time will be

22    significantly greater the longer -- the more time passes.

23         Those are things that can't be resolved in some other

24    venue; advanced, for example, through the direct appeal of an

25    individual action.  Those are harms, and that's a harm that

```
 1   can't be undone.
 2            THE COURT:  Realistically, going down this route that
 3   you and the government are going down, you're not going to have
 4   a final decision from the Federal Courts as to whether or not
 5   this rule is upheld or not upheld for probably another year and
 6   a half to two years.  I mean, you know, my opinion, if I'm
 7   lucky, you'll get an opinion out of me in four weeks to six
 8   weeks.  That would be really fast on a matter of this
 9   complexity.  Then, of course, there will be an appeal --
10   whoever loses will appeal to the D.C. Circuit.  And even on an
11   expedited basis there, that's another probably, I don't know,
12   at least three, maybe six or more months; then whoever looses
13   that is going to try to take it to the Supreme Court.  Now,
14   certiorari might not be granted.  But, it's going to be over a
15   year, year and a half before there's a final decision in the
16   legal system.  So --
17            MS. ZWICK:  Either --
18            THE COURT:  Go ahead.
19            MS. ZWICK:  I apologize, Your Honor.  Please
20   continue.
21            THE COURT:  What I was going to say is as a practical
22   matter, decisions are being made on an assumption that this is
23   all going to be upheld, right?  That it may turn out that it's
24   not upheld.  I mean, at least in theory it's that way, right?
25   So, as a practical matter, if it's not upheld, this is all
```

1    going to get redone.  All of the things that have happened --

2    all the cases will be starting over.

3            MS. ZWICK:  Exactly, Your Honor.  And this is

4    exactly -- the exact reason why plaintiffs are seeking

5    injunctive relief now, to hold -- to preserve the status quo

6    ante while the litigation is allowed to take its course.

7            THE COURT:  You know, maybe I'm not making my point

8    clear enough.  My point that I'm trying to make is it's not

9    only in the interest of the plaintiff, it's in the interest of

10    the defendant to know where the legal system is going to come

11    out on this rule before putting it into effect because they're

12    going to have to redo everything if they lose, the defendants

13    are.

14            MS. ZWICK:  I completely agree with you, Your Honor.

15    And I will say that I think that the harm that's going to

16    happen to individual noncitizens in the interim is massive and

17    that -- that harm will also affect plaintiffs, not only in the

18    way that we will have to, you know, conduct our businesses, but

19    also in the way that we pursue our mission, which is to serve

20    noncitizens.  We have numerous examples of that already, of

21    individual cases that are already here, not available, that

22    we're either not able to take on or that we're taking on but

23    they're much more complicated, meaning that we'll take on fewer

24    cases.  We already have numerous examples of that.

25            THE COURT:  But you're not arguing, I don't think,

1    that the Court -- that I should be focusing on the irreparable

2    harm to the aliens, but the organizational irreparable harm.

3    In order for you to get a PI, you've got to show organizational

4    irreparable harm, right, under *Newby*.

5            MS. ZWICK:  Of course, Your Honor.

6            THE COURT:  Where they rejected, in essence, Judge

7    Mehta's approach in the *Safari Club* case.  So you got the

8    irreparable harm focus on your organizations.  Your

9    organizations are proceeding on the hope that this rule will be

10   shot down by the Federal Court.  The government, on the other

11   hand, is proceeding on the hope and belief that it will be

12   upheld.  But either way, the harm to one side or the other is

13   going to be great because their going to have to, one case redo

14   everything, and in the other case redo it from a different

15   perspective.

16           So it's just -- it doesn't really make sense to me

17   why the parties can't agree to put everything on hold until the

18   Federal Courts make an evaluation of whether this rule should

19   be legally upheld or not legally upheld.  I don't really get

20   it.  Both sides have so much to lose.

21           MS. ZWICK:  I couldn't agree with you more, Your

22   Honor.  I think that -- we would love -- we would welcome the

23   opportunity for this rule to be put on hold, and if -- we would

24   be very happy with the rule to stay -- for the rule to be put

25   on hold while this litigation proceeds, or even to stay the

```
 1    litigation while the rule proceeds if, that's what the

 2    government prefers.

 3              THE COURT:  Based on that order that the Biden

 4    administration issued -- I think you said right at the

 5    beginning of the administration -- you would think this is all

 6    being reviewed for fairness, and that in itself would warrant

 7    putting it on hold pending the outcome of that review, at a

 8    minimum.  So, we'll let Ms. Greer address that.

 9              I'm going to -- you ran over a little bit, but you

10    can still have your five minutes when she's done.  So you're

11    pretty much done right now.

12              MS. ZWICK:  Okay.  That's fine, I'll --

13              THE COURT:  You ran over about seven minutes, but it

14    was based on a question that I asked, so -- on the irreparable

15    harm, so I think we should hold off.  You'll have five more

16    minutes later.

17              MS. ZWICK:  Okay.  Thank you, Judge.

18              THE COURT:  Ms. Greer?

19              MS. GREER:  Yes.  Good afternoon, Your Honor.  I'm

20    Christina Greer, on behalf of the government.

21              Your Honor, I would just like to go ahead and start

22    by addressing your question about the status of this rule.

23    Plaintiff did not -- as plaintiffs admit, a stay under 5 U.S.C.

24    705 cannot be entered by the agency after the rule became

25    effective.  And plaintiff did not present the request to stay
```

1    the effective date of the rule until after the rule became

2    effective, and so at that point the rule was already effective.

3         THE COURT:  But we could say, as part of litigation

4    here, pending the outcome of this litigation the government

5    could stay the rule going into effect.  They do it all the

6    time.

7         MS. GREER:  Yes, but the rule already went into

8    effect, that's the issue.  And there's case law that's

9    mentioned in both briefs -- the reply brief and the

10   government's response brief regarding the fact that after the

11   effective date, the agency can't stay the effective date.  And

12   so that's the problem here.  Plaintiffs did not approach the

13   agency and ask for a stay until after the effective date

14   already passed on June 15th -- or, January 15th.  So that's one

15   issue that I wanted to bring up.

16        Also, you --

17        THE COURT:  But you couldn't -- Ms. Greer, you could,

18   as part of this litigation right now, which is going to,

19   obviously, evaluate the merits of the rule from a legal

20   perspective, the government could agree to not put this rule --

21   not put into effect all of these changes in the rule until the

22   courts decide, you know, whether or not it's consistent with

23   the law, whether it's arbitrary, capricious, whether it's in

24   violation of Congress's statute.  You could await the outcome

25   of that.  But the outcome of that is probably going to take a

1    year and a half, or more.

2            MS. GREER:  I don't know that the case law supports

3    that after the effective date, that the agency can decide

4    without further notice and comment to stay the effectiveness of

5    a rule that's already gone into effect.  I can tell you that

6    the agency is reviewing this rule and it is a priority for

7    review, but it will likely take time for that review and any

8    subsequent actions to take place.

9            THE COURT:  Well, wait a minute.  If the agency --

10   which is the Department of Justice, correct?

11           MS. GREER:  Yes.

12           THE COURT:  If the Department of Justice is currently

13   reviewing the fairness of that rule consistent with President

14   Biden's order and it's going to take, like you just said, it's

15   going to take quite a while to determine what the outcome of

16   that review it, then this review that we're talking about that

17   President Biden has apparently ordered, was ordered after the

18   effective date went into effect.  So, why can't -- why can't

19   the Justice Department, in this litigation, agree to a stay in

20   the implementation of the rule pending the outcome of this

21   litigation?  This litigation is going to go not only to this

22   Court, to me, it's going to go to the D.C. Circuit, the losing

23   side is undoubtedly going to appeal it to the Supreme Court,

24   which may or may not grant cert.  So we're looking at at least

25   another year or more that Federal Courts in this circuit are

1    going to be wrestling with this.

2          This is a very substantial rule that has lots and

3    lots and lots of changes procedurally and, you know, was put

4    into effect at the eleventh hour and whatever number --

5    58-minute or 55-minute, whatever you want to say -- at the end

6    of the last administration.  And I'm just -- I'm at a loss to

7    understand why it is, especially in light of President Biden's

8    order to review for fairness any new rules, why -- why that --

9    a stay of the rule being put into effect pending the outcome of

10   litigation doesn't make sense from both sides' perspective.

11   Both sides.

12          MS. GREER:  Your Honor, two points on that.  The

13   first is that the government believes that there is no

14   jurisdiction in this case.  And one thing that I would like to

15   bring to the Court's attention is that --

16          THE COURT:  I can tell you right now, I don't -- I

17   have reviewed the pleadings on this, which are extensive, and

18   the Court believes it does have jurisdiction.  Now, if you've

19   got something new to add to your pleading arguments, go ahead,

20   be my guest.  But based on my review of the pleadings, I

21   believe I do have jurisdiction --

22          MS. GREER:  And I do have --

23          THE COURT:  -- now.

24          MS. GREER:  Yes, Your Honor.

25          THE COURT:  Go ahead.  If you think you have

1    something new to add to the pleadings, be my guest.  But if you

2    don't have something new to add, you're just wasting your half

3    hour, the parties' half hour.

4         MS. GREER:  Yes, Your Honor.  And I will make this

5    brief.  What I would like to add is plaintiff did not present

6    their theory of jurisdiction in their pleadings and so we

7    challenged it and then they replied in their reply.  But as --

8    or, responded to our argument in their reply.  And we would

9    like the opportunity to reply to what they said.

10        So, what I want to focus on is the fact that under

11   the *Block* line of cases, which includes *Thunder Basin Coal*,

12   that's 510 U.S. 200, where there's a comprehensive judicial

13   review scheme, claims falling outside that scheme cannot be

14   reviewed.  And the D.C. Circuit has held that that's okay, that

15   a statute can preclude a claim from being brought in a District

16   Court, even if it forecloses the claim from administrative

17   review and provides no other way to bring the claim.  And

18   that's in *AFGE versus Trump*, 929 F.3d 748.

19        So our argument is that there is a comprehensive

20   judicial review scheme that allows certain individuals to bring

21   claims in a certain way, and individuals that are not --

22   noncitizens in removal proceedings cannot bring generalized

23   challenges to regulations that regulate only removal

24   proceedings.  And this is consistent with the Court -- or, with

25   the decision in *O.A.* that plaintiffs cite.

1          In *O.A.* the claims included individuals who could not

2     bring their claims in removal proceedings, other noncitizens,

3     because the rule applied not just in removal proceedings, but

4     also outside of them.  Here the rule only applies within

5     removal proceedings and every claim brought as to the

6     constitutionality -- or, constitutionality, statutory conflict,

7     arbitrariness and capriciousness, all of those claims can be

8     brought through final order -- or, a review of a final order of

9     removal before a Court of Appeals.

10          And in a way, the District Court believes that the

11     rulemaking record could not be considered, and that was one of

12     the bases for finding jurisdiction.  But there is a mechanism

13     for including that rulemaking record in a petition for review

14     under 1252, and that's the Hobbs Act, provides two different

15     mechanisms for that; 28 U.S.C. 2347(b)(3) allows for transfer

16     of the proceedings to a District Court for fact finding, if

17     such fact finding is required.  Additionally, 28 U.S.C. 2347(d)

18     allows that a party may seek leave to provide additional

19     evidence, such as a rulemaking record.

20          *O.A.* also claims that following *McNary*, which it said

21     held that District Courts generally have jurisdiction to review

22     general collateral practices in immigration law, but *IUTA* (ph.),

23     which came after and discusses *McNary*, which *O.A.* does not

24     mention, applies more squarely here, where all the aspects of

25     the rule at issue may be brought through -- or, may be

1    challenged through the judicial review scheme for removal

2    orders.

3              Specifically, the D.C. circuit held in *McNary* -- held

4    that *McNary* only allowed for jurisdiction where there were

5    claims outside the judicial review scheme.  And as I said,

6    that's not the case here.  And that's at 7 F.3d 249.

7              So we would urge the Court to consider the fact that

8    there is this comprehensive review scheme under *Block* and

9    *Thunder Basin*, that review scheme is the way to challenge the

10   regulation.  And that review scheme allows for a challenge by

11   an individual to whom these have been applied.

12             And one reason why this is incredibly important is

13   the challenges to -- the challenges made about how this

14   conflicts with certain statutory provisions.  Plaintiffs claim

15   hypothetically that an individual may be deprived of counsel

16   because of a change in one deadline.  Now, whether that

17   actually does operate to deprive an individual of counsel is a

18   claim that may be and should be brought with specific facts in

19   a concrete situation through a petition for review, not in this

20   hypothetical realm where we don't know whether that will ever

21   actually happen to an individual.

22             Similarly, with the ability to review evidence -- or,

23   examine and submit evidence under 8 U.S.C. 1229a(b)(4)(B),

24   whether an individual is unable to examine evidence is a

25   concrete question that requires fact finding and looking at a

1    record to see what actually happened and can't be litigated in

2    the abstract to determine that this entire -- that this

3    portion -- that portion of the rule violates a statute.  It's

4    not clear that it does in a facial challenge in every

5    circumstance.  And similarly, with 8 U.S.C. 1231(c)(3), the

6    withholding statute, individuals may seek withholding -- or,

7    plaintiffs claim that the background check requirement will --

8    allowing the Board to find that an individual has abandoned

9    their application for withholding because they fail to qualify

10   for the background check -- or, fail to comply with the

11   background check, plaintiffs claim that this procedure of

12   sending out instructions will violate the withholding statute.

13         But plaintiffs don't acknowledge that the individuals

14   who would be going to these background checks and have received

15   that notice have already done so because individuals must

16   submit to background checks before the immigration judge.  So

17   this is not some requirement out of nowhere that the individual

18   has never seen before.  The individual has gone to the

19   background check before.

20         And similarly, I would like to note that when it

21   comes to receiving the record, or the transcript, plaintiffs

22   claim that that only can happen when the transcripts are sent

23   out with the briefing notice.  But that's not entirely

24   accurate.  Counsel may request a CD of the hearing from the

25   immigration court itself before the transcripts come in.  So,

1    there is a mechanism there for obtaining the decision before

2    the transcripts are sent out.

3          And, Your Honor, I would like to briefly turn to the

4    irreparable harm because plaintiff -- before continuing with

5    the rest of the argument, because, importantly, plaintiff must

6    show that their injury is unrecoverable and it must be both

7    certain and great and it must be actual and not theoretical.

8          Plaintiff cited the new affidavit from NIJC, and I

9    want to point out that the new affidavit actually misconstrues

10   the rule and ignores some other available options for seeking

11   reopening.  So for the individual granted SIJS mentioned at

12   paragraph 8 and 14 of that declaration, Federal Court

13   litigation is not the only option.  Plaintiffs don't mention

14   that the individuals may file a joint motion to reopen with

15   DHS, which is still available even after the limitation on

16   sua sponte reopening.  And that's at 8 CFR 1003.2(c)(3)(iii)

17   and 1003.23(b)(4)(iii)(D).

18         And in the case discussed in the remand portion of

19   the affidavit, plaintiff ignored the exception provided in the

20   rule.  If the immigration judge made a legal error suggested in

21   paragraph 18, the rule provides that the Board can remand for

22   more fact finding.

23         Also, if, as it appears from the description in

24   paragraph 18 to 19, the noncitizen attempted to present the

25   evidence and that evidence would make a difference, remand

1    would, likewise, be available according to the rules.  And

2    finally, contrary to the suggestion in paragraph 21, at 85

3    Fed.Reg. 81,590, the rule provides that remand is available for

4    further fact finding where the immigration judge failed to

5    develop the record in a pro se case.

6            Finally, the change to administrative closure does

7    not apply to the cases that plaintiffs discussed at paragraph

8    23 through 27.  The first page of the rules state that the

9    provisions of the rule regarding administrative closure are

10   applicable to all cases initiated by a charging document,

11   reopened or re-calendared after the effective date.  And that's

12   85 Fed.Reg. 81,588.  But according to plaintiffs' affidavit,

13   all the cases cited there are pending before the immigration

14   court and so would not be subject to the change in the

15   regulation affecting administrative closure.

16           And so this is what defendant referred to by saying

17   that the claims for irreparable harm are speculative.  It's

18   that many of the examples provided don't -- either won't be

19   impacted by the rule or there is another method that doesn't

20   require the dire -- the amount of resources that plaintiffs are

21   claiming it would take to obtain the outcome that they are

22   seeking.

23           And so going back to arbitrary and capriciousness --

24   unless there's another -- I know I'm about halfway through my

25   time.  If there's another portion that the Court would like to

1    discuss or would like me to discuss?

2              THE COURT:  I was a little concerned in your brief on

3    the issue of -- on the issue of irreparable harm.  You seem to

4    be advocating for a heightened standard that was rejected in

5    *Newby* by the D.C. Circuit.  Do you actually think you're

6    applying *Newby* as the D.C. Circuit set it forth in the -- in

7    its opinion, or are you not asking for a heightened standard

8    that plaintiffs in this case would have to answer to?

9              MS. GREER:  We were advocating for a heightened

10   standard, but we think that even under a -- not under a

11   heightened standard, that plaintiffs -- or, we just don't think

12   that plaintiffs reached the -- even a non-heightened standard.

13             I'm not sure that I see a citation to *Newby*.  I

14   apologize, Your Honor.  Could you refresh my memory on what the

15   holding of that case is?

16             THE COURT:  *League of Women Voters versus Newby*.  If

17   you're not familiar with it, then that tells me all I need to

18   know.

19             MS. GREER:  Yes, Your Honor.

20             But, so the defendants believe that plaintiffs have

21   not even met the irreparable harm -- the normal irreparable

22   harm requirement, much less a heightened one.  And

23   specifically, making -- preparing training materials and using

24   some resources is not necessarily irreparable harm,

25   particularly taken in conjunction with the fact that the other

 1    claims to harm are speculative.

 2              THE COURT:  Okay.

 3              MS. GREER:  So moving to --

 4              THE COURT:  Deal with the arbitrary and capricious

 5    arguments.

 6              MS. GREER:  Yes, Your Honor.  Importantly here, the

 7    government points out that these are all procedural rules that

 8    are subject to a special deference when it comes to the

 9    agency's determinations of what will or will not be more

10    efficient.  And particularly, the option chosen didn't have to

11    be the best option or the one that the Court would choose or

12    the one that plaintiffs would choose, but, rather, the agency

13    must acknowledge its choice and explain it.  And the agency did

14    so here.

15              Plaintiffs assert that the main justification for the

16    rule is efficiency.  But if the Court looks at the first page

17    of the rule, that's not the first justification.  The first

18    justification is consistency.  So we have consistency,

19    efficiency, quality of adjudications and, elsewhere in the

20    rule, finality.  And finality is an incredibly important

21    justification here.  So plaintiffs focus only on efficiency,

22    but there are many other competing interests here.  And so the

23    agency was balancing all of these different interests when it

24    came to the determination that this -- these were the -- these

25    were reasonable actions or reasonable rules to put into effect

1    in order to balance all of those different factors.

2            And so, first, the rule does, however, promote

3    efficiency and explains how it does so.  Plaintiffs mostly

4    focus on the lack of remand in this portion of their briefing.

5    And petitioner -- or, plaintiffs allege that, you know,

6    individuals will be -- or, suggest that individuals will be

7    almost immediately removed if they are required to wait to file

8    a stay -- or, a motion to reopen.

9            But individuals may file a stay motion along with

10    that motion to reopen.  And when it comes to agency efficiency,

11    motions to reopen and to remand are treated very similarly.

12    The difference is that motion to reopen comes after all of the

13    other issues are resolved.  And so, it allows for that

14    administrative finality without interruptions of remands back

15    and forth between the immigration judge and the Board, but lets

16    the case play out and then a motion to reopen may be filed.

17            Plaintiffs also claim that the department did not

18    appropriately consider relevant facts and data.  But it did so.

19    In the over 100 pages of justification, the agency goes through

20    many different facts and puts out data supporting its decision-

21    making.  And plaintiffs highlighted that 86 -- the number

22    86 percent of individuals being represented before the Board

23    and said that the true number that should be looked at is the

24    40 percent at the immigration judge level.  But that doesn't

25    square with the actual subject of this rule because there's --

1    no changes are being made between the immigration judge level

2    and the filing of a notice to appeal.  The change here is

3    before the Board.  And so the question is really how many

4    individuals are represented by counsel before the Board?

5              And again, this rule does not -- plaintiffs seem to

6    claim that an individual must have time -- at any point in the

7    process must have a lot of time in order to find counsel

8    because, for example, individuals seem to not find counsel

9    until the notice -- or, until the briefing notice is out.  But

10   again, there's nothing in immigration court or removal

11   proceeding procedure that limits anyone to finding counsel at

12   the time the briefing notice is filed.  And these rules -- it's

13   not reasonable to expect that that's when most people find

14   counsel.  It is reasonable to expect that individuals be

15   diligent and seek counsel before a brief is due.

16             Plaintiffs also claim that the rule is internally

17   inconsistent because it's taking several different footnotes

18   and comparing them and claiming that they are inconsistent.

19   But as we stated in our briefing, they are not inconsistent.

20             And finally, the department did not ignore

21   significant comments.  The department discussed the comments

22   that plaintiffs raised and, as we discussed in our briefing,

23   the agency did in fact respond to those comments.

24             And moving to actually focus on the comments

25   themselves -- or, more on the comments, plaintiffs claim that

1    the comment period was insufficient --

2          THE COURT:  Yeah, I would like you to focus on that.

3    This was, obviously, a comprehensive change and a rather

4    dramatic change in the procedural procedures that the parties

5    and the -- and their counsel will have to comply with, and

6    changes in the scope of the authority of the various agencies'

7    component subparts.  Pretty major thing.  And it's being done

8    at the very end of the administration's -- prior

9    administration, I might add -- and 30 days, at least at first

10   blush strikes me as awfully short.

11         MS. GREER:  Understood, Your Honor.  And the

12   question, when it comes to the opportunity to comment, is just

13   that; did the public have adequate opportunity to comment?  And

14   here they did.  I would point the Court to *Omnipoint Corp.*

15   *versus FCC*, which is at 78 F.3d 620, it's the D.C. Circuit

16   case.  And like the case here, the Court -- or, the agency -- I

17   can't remember the length of the comment period, but I believe

18   it was between 15 and 30 days.  The commission received 45

19   comments and 42 letters.  It considered those comments and it

20   responded to those comments in the rule and made changes to the

21   rule.  And the D.C. Circuit found that the comment period was

22   sufficient.

23         And it's similar here, the agency received 1200

24   comments, including from plaintiffs.  The agency considered

25   those comments and in the beginning portion of the preamble

1    explained several instances where it changed the rule as a

2    result of those comments.  And so, under case law, this comment

3    period was sufficient.

4         Plaintiffs allege that they would have made other

5    comments an, some commenters said they would have raised other

6    issues and, they even state vaguely what the issues are, such

7    as they would have addressed another rule.  But even months

8    later, plaintiffs have not identified what they would have said

9    with any specificity had they had more time.  And that's

10   something that was raised and discussed in *Omnipoint*, the Court

11   noted that the plaintiff had had -- since the come period, the

12   plaintiffs had had a considerable period of time to consider

13   the rule but failed to identify any substantive challenges it

14   would have made had it been given additional time.

15        And that's the same thing here.  And plaintiffs still

16   have not identified -- although they identified what commenters

17   said they would have commented on, or what else they would have

18   discussed, they did not state what plaintiff would have raised

19   had the comment period been any longer.  And that's --

20   defendant believes that the -- not only was the comment period

21   sufficient, but plaintiffs have not identified any prejudicial

22   error under 5 U.S.C. 706.

23        THE COURT:  All right.  Well, you have about four

24   minutes left, so do with it what you will.

25        MS. GREER:  If the Court doesn't have any questions,

1    I will then just state briefly about the Regulatory Flexibility

2    Act.  I wanted to note that plaintiffs alleged that their

3    contractual relationships with their clients, citing

4    *Aeronautical Repair Stations*, is sufficient to bring them

5    within the scope of this rule such that they should have been

6    considered small entities effected by the rule.  But notably,

7    the contractors and subcontractors in *Aeronautical Repair*

8    *Station* were not regulated by the rule.  And that's what the

9    Court relied upon, was the fact that subcontractors and

10   contractors had to be tested under the express provisions in

11   the rule, and that's not the case here.

12          So, plaintiffs claim that the case law cited by the

13   defendants is outdated, but that's not the case.  The decision

14   in *Aeronautical Repair Station* is consistent with *Cement Kiln*,

15   which is consist with defendant's argument that plaintiffs here

16   are legal services organizations that are not regulated by the

17   rule and, thus, did not need to be considered in the Regulatory

18   Flexibility Act analysis.

19          But if there's -- if the Court does not have any

20   other questions, defendants are happy to rely on their brief.

21          THE COURT:  Very good.  Thank you very much.  We'll

22   give --

23          MS. GREER:  Thank you, Your Honor.

24          THE COURT:  We'll give the two minutes that you had

25   left to the plaintiff, to make her rebuttal seven minutes.

1           MS. ZWICK:  Thank you, Your Honor.  Just a few points

2     in response.  Starting with the jurisdictional arguments that

3     the government makes, the bottom line here is that last term,

4     in *Regents*, the Supreme Court said that the, quote, tailored

5     language of Section 1252(b)(9) is not aimed at what they called

6     this sort of case.  This sort of case being an APA challenge to

7     a rule -- to a rule of broad-based defense.

8           It's not true that the claims in this case could be

9     brought in removal proceedings because plaintiffs are not, you

10    know, citizens and they could not, therefore, seek redress for

11    the harms that they had by pursuing them in removal proceeding.

12    And that jurisdiction point merges, of course, with the next

13    point that I want to make which relates to harm.

14          Just as we're finishing our time -- my time, Your

15    Honor, Your Honor was asking me about the harm that we are

16    focused on.  And Your Honor was right to say that we are not

17    seeking injunctive release based on the harm directly to our

18    clients.  Our claim is that because our organizations' missions

19    are to serve clients to the maximum degree possible, those

20    harms affect us, not -- in the way that we do our work.  And

21    the government really has no response to that.

22          Even if you take the government's example of the

23    sua sponte reopening case that is mentioned in the supplemental

24    declaration, even if they were right, that we could go through

25    with it, with getting the case reopened via agreement with the

1    government -- which, by the way, I think is highly unlikely,

2    given the government's long-standing refusal to engage in that

3    kind of litigation -- even if it were true, though, it would

4    still be a significantly additional amount of work that would

5    not have been necessary under the previously distinguished

6    regime.

7            And in that case, one of those two reopening cases --

8    NIJC, for example, engaged in it, like, significantly longer

9    discussion about whether or not we can even take the case

10   because it's not clear that there isn't anything to do.  And

11   it's certainly clear -- what is clear is that anything that we

12   would do for that individual would take two or three or four

13   times as much time as it would under the previous.  And that's

14   just one example.  Of course, the number of examples will grow

15   and grow and grow as the amount of time passes.  And, you know,

16   we can provide additional examples not just from plaintiff

17   NIJC, but from all of the plaintiffs, if the Court would like

18   to see them.

19           THE COURT:  What about the argument that Ms. Greer

20   made about the 30-day period is more than adequate amount of

21   time for comment in this case?

22           MS. ZWICK:  Yes, Your Honor.  Thank you for asking

23   about that.  The notice and comment period -- Ms. Greer's

24   comment about the notice and comment period is not correct.

25   Plaintiff -- say, for example, the attorney general's decision

1    in the *Matter of A-C-A-A*, that decision came out in the last

2    day of the comment period in this case and it also affects

3    proceedings before the Board in a significant way.  Some

4    commenters commented on the way that they would have liked

5    to have more time to explain how that rule intersects with the

6    rule.  But because that decision came out one day before the

7    close of comments, they didn't.

8            The government hasn't mentioned *A-C-A-A* in its

9    briefing, the rule doesn't cite it, and so it's just not true

10   that there's no indication of what the -- what the issues would

11   be.  The same is true for subsequent rule -- subsequent and

12   closely related rulemaking.  I'll point the Court's attention

13   to the decision -- the D.C. Circuit's decision in *Portland*

14   *Cement*, which has, I think, two important points that bear --

15   that mention here.

16           The first is that the right-hand must know what the

17   left is doing.  And that, second, is the agency must take into

18   account closely related rulemaking.  It's important to note

19   that the attorney general, when it comes to *Matter of A-C-A-A*,

20   the attorney general himself issued the rule in this case and

21   the attorney general himself signed the decision in *Matter of*

22   *A-C-A-A*.  And the reason why those two things are so

23   interconnected is because the rule condenses the amount of time

24   that someone would have to file an appeal to the board.  And

25   the decision in *Matter at A-C-A-A* makes it substantively

1    significantly more complicated to actually do BIA briefing

2    because it requires individuals to brief things, even if they

3    were stipulated to before the agency.  In other words, the

4    government stipulations before the IJ or in their own appeal

5    can't be taken into account on appeal.  And that was an issue

6    that was identified, one of a few that was identified in the

7    comments, that people would have liked to have a greater

8    opportunity to speak to and they didn't get to.

9         The same is true for the numerous other pieces of

10   interconnected rulemaking that have occurred.  Not just the

11   ones that came out in December, but also that had been ongoing,

12   basically, for the past six months.  Important in two of those

13   particular rules, it bears mention especially, the notice of

14   proposed rulemaking with respect to the continuance -- with

15   respect to continuances before the agency and the notice of

16   proposed rulemaking with respect to motions to reopen.

17        Those two proposed rules are extremely important,

18   given that this rule justifies the changes to sue sponte

19   reopening, to admin closer, and for administrative closure on

20   the existence of those other remedies, all the while knowing

21   that they were in the process of issuing a proposed rulemaking

22   that would curtail those.  The government's only response to

23   that is, well, those rules haven't taken effect.  They could

24   have taken effect, and even if they couldn't, there was no

25   possibility in this rulemaking timeframe for plaintiffs to

1    comment on those rules because the notice of proposed

2    rulemaking hadn't even been issued yet.

3    And then finally, Your Honor, on the Regulatory

4    Flexibility Act piece, we're not talking about our contractual

5    relationship with our client as the basis for our arguments in

6    that space.  We're talking about plaintiffs' contractual

7    relationships with defendants in this case.  Specifically,

8    CLINIC has a contractual relationship with the EOIR to run the

9    BIA program or project.  And CLINIC forms project has a

10   contractural relationship to do legal orientation programming

11   with the government.  Those contractual relationships are the

12   ones that we're referring to, not our contract relationships

13   with the government.

14   And under the Regulatory Flexibility Act, it's just

15   not true that -- it's just not true that this rule regulates

16   entities -- individuals and not entities.  There's no dispute

17   from the government that our -- that our client, plaintiffs'

18   clients will be subject to this rule and that we will have

19   to -- plaintiffs themselves will have to comply with this rule.

20   So to suggest that that's -- to suggest that that's something

21   that is what's going on here is not true.

22   And also, Ms. Greer repeated a line from her briefing

23   that I want to respond to, which is the claim that, quote,

24   nothing in the rule impacts the ability of individuals to take

25   on representation.  As I said before, Your Honor, that's not

1    true.  Because the rules respond to numerous items is to say,

2    well, file a late brief and ask for it to be considered.

3    Basically, the rule's answer is if your capacity is limited, do

4    things that are contrary to what the ethical lawyering would

5    look like.

6              And just finally, Your Honor, the -- excuse me --

7    what Ms. Greer said about the ability to request the CD and the

8    ability to sort of move up the ability to look into a case,

9    again, that's also not exactly true because once the case is

10   transferred to the immigration court, to the Board of

11   Immigration Appeals, the immigration court can't issue the CD,

12   you have to get them from the Board, and you can't get CDs from

13   the Board.  So it's just like a little divorce from reality of

14   how the practice works, some of that answer that defendants

15   have provided for how things will work.

16             I'm not sure if there are other things that the Court

17   wants me to respond to specifically --

18             THE COURT:  Why don't you finish up with responding

19   to Ms. Greer's contention that the Department of Justice does

20   not have the authority to enter into a stay of enforcing this

21   rule and putting it into effect pending the outcome of this

22   litigation.

23             MS. ZWICK:  Sure, Your Honor.  So, the government is

24   certainly correct that Section 705 only allows the government

25   itself to stay a rule prior to its effective date.  And Your

1    Honor correctly pointed out that Section 705 offered the Court

2    a much broader ability.  The Court can order a stay in order to

3    preserve rights or status.  And that's what we're asking the

4    Court to do.  It's not -- whether or not the Court -- the

5    government has the authority to do so -- this is why -- this is

6    why we're asking for the Court to take action here.  And this

7    is exactly why an injunctive relief should be -- is what is

8    most important in this matter.  The government could also enter

9    into an agreement with us, if they wanted to -- I believe -- I

10    do believe that the government could enter into an agreement

11    not to enforce the rule going forward, if this Court ordered

12    such a thing, or it -- in some --

13         THE COURT:  Do you believe this Court has the

14    authority to stay the agency action pending -- to stay any

15    agency action to effectuate this rule pending the outcome of

16    this particular litigation?

17         MS. ZWICK:  I do, Your Honor.  And I think, really,

18    the question of what the Court's authority is with respect to

19    the 705 stay is concomitant with the Court's authority for

20    injunctive relief.  And it's certainly clear that the court has

21    the ability to enjoin enforcement of the rule.  That is

22    absolutely true.  And the government -- so I think that --

23         THE COURT:  It would just seem to me that it would be

24    not only in your interest, but in the government's interest,

25    especially in light of President Biden's issuance of a

1    directive for the various agencies.  You know, we don't even

2    have our new attorney general yet.  Judge Garland hasn't been

3    confirmed yet, as far as I know, he's been through the hearing

4    for -- at the judiciary committee.  He hasn't been confirmed.

5    And the Department of Justice, as Ms. Greer appropriately

6    pointed out, is in the process of reviewing this rule in order

7    to determine whether it's, quote, fair, close quote, which

8    apparently President Biden's directive was to all the

9    agencies -- all of them -- all the cabinet departments about

10   rules that were enacted just prior to and going into effect now

11   that his administration is taking place.

12          I don't see how it's not only not in your interest,

13   but also in the government's interest to put a stay on this

14   pending the outcome of this litigation before this Court, and

15   undoubtedly the D.C. Circuit.  Whether the Supreme Court will

16   ever hear the case, I don't know, that's up to the Supreme

17   Court.  You to have certiorari granted there, so you have to

18   have four votes.

19          MS. ZWICK:  Absolutely.

20          THE COURT:  Absolutely there will be an opinion from

21   this Court and there will be an opinion from the D.C. Circuit

22   one way or the other here.  And who knows, that might even

23   include a remand for some other purpose, I don't even know.

24   And I understand that there's a case that's similar to this

25   that's pending out in California, in the Ninth Circuit.

1          MS. ZWICK:  That's right, Your Honor.

2          THE COURT:  I guess it's possible that that judge

3     might send it to me to consolidate the two cases, I don't know.

4     I don't know what's going on with that case out there.  But, my

5     case was filed first, so I'm going to have to rule one way or

6     the other.  And I'm just -- frankly, you know, maybe the

7     agency, the Department of Justice is so intent on defending,

8     you know, the rule itself and the process by which the rule was

9     constructed that they don't care about the practical

10    ramifications.

11         But the practical ramifications here are considerable

12    because if either this Court or the D.C. Circuit decide that

13    that rule is in violation of the law, they're going to have to

14    redo a lot of things, if they haven't already put a hold on

15    this thing.

16         MS. ZWICK:  I completely agree with you, Your Honor,

17    and that's why we're asking for the rule to either be stayed or

18    enjoined.  And we think the Court does have the authority to

19    issue its stay.  But, if not, an injunctive relief would be --

20    it would be necessary to avoid those very same harms Your Honor

21    is addressing; again, on both sides.

22         THE COURT:  I'm going to give -- I'm going to give

23    the parties -- I do this periodically when I have a PI.  I'm

24    going to give the parties ten days -- let's say today is the --

25    I'll give you until Monday, the 15th.  I'll give you until the

1    15th to file a supplemental pleading on the limited issue of

2    whether this Court has authority to grant a stay here pending

3    the outcome of this litigation.  And if either side -- I'm not

4    going to require you to do it, it's up to you to decide what

5    you want to do.  But I think that's an important consideration

6    here and the Court would like the benefit of both sides

7    thinking on the issue.

8          If the Department of Justice is so convinced that

9    this Court doesn't have the authority do that pending outcome

10    of litigation, or that the Justice Department doesn't have the

11    authority itself to enter into such an agreement voluntarily

12    with the plaintiff, that's fine.  Set forth your reasoning, set

13    forth your arguments, et cetera, et cetera.

14          On the other hand, if this Court is convinced it has

15    the authority to stay the playing field pending to deciding

16    whether an injunction is appropriate and whether or not this

17    law is -- whether or not this rule is in violation of the law,

18    then, well, we'll see what happens.

19          So you've got until the 15th, Counsel.  Close of

20    business on the 15th to file supplemental plead on the issue of

21    the Court's authority to stay the rule being put into effect

22    pending the outcome of this litigation.

23          Anything else, Ms. Zwick?

24          MS. ZWICK:  No.  Thank you, Judge.

25          THE COURT:  Anything else, Ms. Greer?

```
 1              MS. GREER:  No, Your Honor.  Thank you.

 2              THE COURT:  All right.  Keep that pleading,

 3    supplemental pleading, if you file them, 15 pages or less.  I

 4    don't want a book.  Thank you very much.

 5              UNIDENTIFIED SPEAKER:  Understood, Your Honor.

 6              THE COURT:  And congratulations to both sides on

 7    really strong briefs and really good arguments today.  This is

 8    a very complicated and nuanced area.  And speaking as a person

 9    who is not an expert on immigration law and all its

10    regulations, it was very helpful to have really good briefs and

11    really solid arguments.  So thank you so much, Counsel.

12              MS. ZWICK:  Thank you, Your Honor.

13              MS. GREER:  Thank you, Your Honor.

14              THE COURT:  Goodbye.

15                            *   *   *

16

17

18

19

20

21

22

23

24

25
```

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, JANICE DICKMAN, do hereby certify that the above and

4     foregoing constitutes a true and accurate transcript of my

5     stenographic notes and is a full, true and complete transcript

6     of the proceedings to the best of my ability.

7                            Dated this 6th day of March, 2021

8

9                          _____

10                          Janice E. Dickman, CRR, CMR, CCR
                            Official Court Reporter
11                          Room 6523
                            333 Constitution Avenue, N.W.
12                          Washington, D.C.  20001

13

14              This hearing was held telephonically in compliance
       with the COVID-19 pandemic stay-at-home orders and is,
       therefore, subject to the limitations associated with the use
15     of current technology, including but not limited to telephone
       signal interference, static, signal interruptions, and other
16     restrictions and limitations associated with remote court
       reporting via telephone, speakerphone, and/or
17     videoconferencing.

18

19

20

21

22

23

24

25