**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.: 1:21-cv-00094 (RJL) |
| EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, *et al.*, | |
| *Defendants*. | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO STAY AGENCY ACTION UNDER 5 U.S.C. § 705 AND/OR FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

I.     The Court May Issue Injunctive Relief to Preserve Status or Rights
       Under Section 705 or Rule 65................................................................................ 1

II.    This Court Has Jurisdiction to Consider This Case and Thus May Stay
       or Enjoin the Rule. ................................................................................................. 7

CONCLUSION............................................................................................................. 11

CERTIFICATE OF SERVICE .................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arch Coal, Inc. v. Acosta,*
    888 F.3d 493 (D.C. Cir. 2018) .............................................................................10

*Ayuda v. Reno,*
    7 F.3d 246 (D.C. Cir. 1993) ...........................................................................10, 11

*Bauer v. DeVos,*
    325 F. Supp. 3d 74 (D.D.C. 2018) ........................................................................5

*Brady Campaign to Prevent Gun Violence v. Salazar,*
    612 F. Supp. 2d 1 (D.D.C. 2009) ..........................................................................3

*Cap. Area Immigrants' Rts Coal. v. Trump,*
    471 F. Supp. 3d 25 (D.D.C. 2020) ........................................................................7

*Casa de Md., Inc. v. Wolf,*
    486 F. Supp. 3d 928, No. 20-cv-2118, 2020 WL 5500165
    (D. Md. Sept. 11, 2020) ........................................................................................1

*Casa de Md. v. DHS,*
    924 F.3d 684 (4th Cir. 2019) .................................................................................9

*\*Centro Legal de la Raza v. EOIR,*
    No. 21-cv-00463, 2021 WL 916804 (N.D. Cal. Mar. 10, 2021) .........................6, 7

*CLINIC v. EOIR,*
    No. 20-cv-03812, 2021 WL 184359 (D.D.C. Jan. 18, 2021).................................7

*Cook Cty., Illinois v. McAleenan,*
    417 F. Supp. 3d 1008 (N.D. Ill. 2019) ..................................................................7

*Corley v. United States,*
    556 U.S. 303 (2009)..............................................................................................2

*\*DHS v. Regents of the Univ. of Calif.,*
    140 S. Ct. 1891 (2020)......................................................................................9, 11

*Dist. of Columbia v. U.S. Dep't of Agric.,*
    444 F. Supp. 3d 1 (D.D.C. 2020) ..........................................................................4

*Guerrero-Lasprilla v. Barr,*
    140 S. Ct. 1062 (2020)........................................................................................10

*INS v. St. Cyr,*
    533 U.S. 289 (2001) ..................................................................................8, 9

*Jacinto-Castanon de Nolasco v. ICE,*
    319 F. Supp. 3d 491 (D.D.C. 2018) ..............................................................5

*Jarkesy v. SEC,*
    803 F.3d 9 (D.C. Cir. 2015) .......................................................................7, 8

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) .......................................................................9, 10, 11

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ...........................................................................3

*Loughrin v. United States,*
    573 U.S. 351 (2014) .......................................................................................2

*Make the Rd. N.Y. v. Pompeo,*
    475 F. Supp. 3d 232 (S.D.N.Y. 2020) ...........................................................1

*McNary v. Haitian Refugee Ctr., Inc.,*
    498 U.S. 479 (1991) .....................................................................................10

*Mexichem Specialty Resins, Inc. v. EPA,*
    787 F.3d 544 (D.C. Cir. 2015) .......................................................................5

*Nasrallah v. Barr,*
    140 S. Ct. 1683 (2020) ...................................................................................9

*Nielsen v. Preap,*
    139 S. Ct. 954 (2019) ...................................................................................10

*Nken v. Holder,*
    556 U.S. 418 (2009) ...................................................................................2, 3

*Nw. Immigrant Rts Project v. USCIS,*
    No. 19-cv-3282, 2020 WL 5995206 (D.D.C. Oct. 9, 2020) ......................5, 7

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,*
    389 F.3d 973 (10th Cir. 2004) .......................................................................5

*O.A. v. Trump,*
    404 F. Supp. 3d 109 (D.D.C. 2019) ..............................................................8

*P.J.E.S. by & through Escobar Francisco v. Wolf,*
  No. 20-cv-2245, 2020 WL 6770508 (D.D.C. Nov. 18, 2020) ..................................................1

*\*Philadelphia Co. v. SEC,*
  164 F.2d 889 (D.C. Cir. 1947) ............................................................................................2, 3

*Prairie Prot. Colo. v. USDA APHIS Wildlife Servs.,*
  No. 19-cv-2537, 2019 WL 4751785 (D. Colo. Sept. 30, 2019).............................................4

*Safety-Kleen Corp. v. EPA,*
  Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324
  (D.C. Cir. Jan. 19, 1996)......................................................................................................4

*\*Scripps-Howard Radio, Inc. v. FCC,*
  316 U.S. 4 (1942)...............................................................................................................2, 3

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994)...........................................................................................................7, 8

*U.S. Ass'n of Reptile Keepers, Inc. v. Jewell,*
  103 F. Supp. 3d 133 (D.D.C. 2015) .......................................................................................1

*Wyoming v. U.S. Dep't of Interior,*
  Nos. 18-8027 & 18-8029, 2018 WL 2727031 (10th Cir. June 4, 2018)..................................5

**Statutes, Regulations, and Rules**

5 U.S.C. § 705............................................................................................................... *passim*

Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*
  § 1158(d)(4) ..........................................................................................................................8
  § 1101(i)(1) ...........................................................................................................................8

  § 1184(p)(3)(A)......................................................................................................................8
  § 1229a(b)(2) .........................................................................................................................8
  § 1252(a)............................................................................................................................8, 9
  § 1252(b)......................................................................................................................8, 9, 10
  § 1443(h) ...............................................................................................................................8

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
  Div. C of Pub L. 104-208, 110 Stat. 3009-546 (1997) .........................................................11

85 Fed. Reg. 81,588 (Dec. 16, 2020)........................................................................................6

Federal Rules of Civil Procedure Rule 65 ...........................................................................1, 4, 6

## INTRODUCTION

This Court has broad authority under 5 U.S.C. § 705 to stay administrative action, and it should do so here. Additionally, the Court has clear authority to issue a preliminary injunction under Federal Rule of Civil Procedure 65, which is a remedy that is akin to a stay under Section 705. Defendants' primary retorts—that this Court's authority is limited because the Rule has taken effect and that this Court lacks jurisdiction—are without merit.

## ARGUMENT

**I.      The Court May Issue Injunctive Relief to Preserve Status or Rights Under Section 705 or Rule 65.**

There is no dispute that, if the Court has jurisdiction to hear this case, it has jurisdiction to enjoin the enforcement of the Rule under Federal Rule of Civil Procedure 65. Courts routinely enjoin rules and other agency actions that have already taken effect, as numerous cases illustrate.[1]

The Court's authority to stay the Rule, even after it has become effective, is just as clear as its authority to issue an injunction. Indeed, the Government has previously conceded as much. *See, e.g.*, *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, No. 20-cv-2118, 2020 WL 5500165, at *8 (D. Md. Sept. 11, 2020) ("The Government rightly responded that a section 705 stay, in effect, functions similarly to a preliminary injunction and so it would not contest this Court's power to issue such a stay after the effective date of the challenged rules."). That authority flows from two sources. First, 5 U.S.C. § 705 states, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and

---

[1] *See, e.g.*, *P.J.E.S. by & through Escobar Francisco v. Wolf*, No. 20-cv-2245, 2020 WL 6770508, at *37 (D.D.C. Nov. 18, 2020); *U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*, 103 F. Supp. 3d 133, 166 (D.D.C. 2015), *aff'd sub nom. U.S. Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131 (D.C. Cir. 2017); *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 270-71 (S.D.N.Y. 2020).

appropriate process to postpone the effective date of an agency action *or to preserve status or rights* pending conclusion of the review proceedings" (emphasis added). The use of the disjunctive "or" in Section 705 is significant: courts may postpone the effective date of a rule *or* take necessary steps to "preserve status or rights." *Id.*; *see, e.g.*, *Loughrin v. United States*, 573 U.S. 351, 357 (2014) ("To read the next clause, following the word 'or,' as somehow repeating that requirement, even while using different words, is to disregard what 'or' customarily means. As we have recognized, that term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings.'" (quoting *United States v. Woods*, 134 S. Ct. 557, 567 (2013)). Otherwise, the latter clause becomes surplusage, in conflict with standard principles of statutory interpretation. *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant. . . ." (quotation omitted)).

Second, as the Supreme Court and D.C. Circuit have stated, this Court's stay authority is incidental to its authority to review the legality of the agency's action. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 426 (2009) ("An appellate court's power to hold an [administrative] order in abeyance while it assesses the legality of the order has been described as 'inherent,' preserved in the grant of authority to federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" (quoting All Writs Act, 28 U.S.C. § 1651(a))); *Philadelphia Co. v. SEC*, 164 F.2d 889, 902 (D.C. Cir. 1947) ("This court has inherent power to stay administrative orders." (citing *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4 (1942))). Indeed, "[t]he power to grant a stay pending review. . . [is] part of a court's 'traditional equipment for the administration of justice,'" which allows "[a] reviewing court [to] bring considered judgment to bear on the matter before it," even where that review cannot "be

done quickly enough to afford relief to the party aggrieved by the order under review." *Nken*, 556 U.S. at 427 (quoting *Scripps-Howard*, 316 U.S. at 9-10).

A court's power to exercise its equitable authority—whether via stay or injunction—is not affected by an agency's decision to rush a massive suite of complex changes into action. As the D.C. Circuit explained when rejecting the "distinction between a mandatory and prohibitory injunction" that Defendants have advanced in this case, *see* Mem. in Opp'n to the Mot. to Stay, ECF No. 35 ("Opp."), 6, limiting injunctive relief against rules that have taken effect would rely upon an "arbitrary criterion: whether the agency decision was of a sort that could be given practical effect before plaintiffs could get into court." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016). And courts have recognized that a preliminary injunction is useful to preserve "the parties' relative positions . . . until resolution of Plaintiffs' claims on the merits" even where it "would not prevent the Final Rule from reaching its effective date." *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 12 n.9 (D.D.C. 2009) (preliminarily enjoining final rule after its effective date had passed). The relief Plaintiffs seek would serve exactly that purpose here.

As this Court is well aware, the impact of allowing this Rule to be in effect while this litigation proceeds would be enormous. If the Rule is not stayed or enjoined pending this Court's review, "the time and effort of [Plaintiffs] will have been expended and expenses incurred; and the time and effort of [Defendants] will also have been called upon." *Philadelphia Co.*, 164 F.2d at 902. "[I]f the [Rule] is set aside, all of this will have been fruitless and confusion will result." *Id.* By contrast, there is no harm to Defendants in maintaining the status quo ante of the procedural rules that existed for decades before the Rule, while this Court considers this case. *See id.*

3

Defendants' argument at the hearing was a narrow one: they relied on the fact that *agencies* lack authority to postpone the effective date of a rule after that date has passed. *See* Mar. 4, 2021 Tr. of Mots. Hr'g ("Hrg. Tr.") at 25:23-25 ("[A] stay under 5 U.S.C. 705 cannot be entered *by the agency* after the rule became effective." (emphasis added)). But that limit on *agency* authority does not suggest that *courts* cannot stay a rule or otherwise issue equitable relief after the rule's effective date. Nor have they contested that the legal analysis for a judicial stay under Section 705 parallels the analysis for injunctive relief, under which the Court's authority is undisputed. *See Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020) ("The factors governing issuance of a preliminary injunction also govern issuance of a § 705 stay."); *Prairie Prot. Colo. v. USDA APHIS Wildlife Servs.*, No. 19-cv-2537, 2019 WL 4751785, at *1 (D. Colo. Sept. 30, 2019) ("[T]he distinction between Rule 65 and § 705 is mostly technical because a § 705 stay is a provisional remedy in the nature of a preliminary injunction, and its availability turns on the same four factors considered under a traditional Rule 65 analysis." (citation omitted)).

Given the overlap between stays and injunctive relief and this Court's indisputable authority to enjoin the Rule under Federal Rule of Civil Procedure 65, the Court need not even reach any dispute about whether Section 705 independently authorizes necessary and appropriate equitable action here. In any event, any argument to the contrary would be meritless. As Plaintiffs explained in their reply, *see* Reply Br. In Supp. of Mot. to Stay, ECF No. 37 ("Reply"), at 4-5, courts have held that Section 705 empowers *agencies* to postpone the effective date of final rules only before the effective date arrives, but have not extended that conclusion to relief entered by a court. *See, e.g.*, *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996) ("That statute permits *an agency* to postpone the effective date of a not yet effective rule, pending judicial review. It does not permit *the agency* to suspend without

notice and comment a promulgated rule . . . ." (emphasis added)). As discussed above, Section 705 provides distinctly broader authority to reviewing courts than it does to agencies. The Government has acknowledged, indeed relied upon, that distinction in other contexts. *See, e.g.*, *Bauer v. DeVos*, 325 F. Supp. 3d 74, 103 (D.D.C. 2018) (noting that "*the Department* observes that § 705 describes the standard applicable to judicial stays in different terms and argues that, by distinguishing between agency action and court action, Congress committed each exclusively to the province of the entity taking action." (emphasis added, internal quotations and alterations omitted)). The Government has not cited, and Plaintiffs have not found, any cases suggesting that courts lose their authority under Section 705 once the effective date of the action at issue arrives.[2]

Nor is such a stay unauthorized on the basis that it would somehow disturb the status quo. As Plaintiffs explained previously, the relevant status quo for purposes of this case is "the last uncontested status which preceded the pending controversy," *Jacinto-Castanon de Nolasco v. ICE*, 319 F. Supp. 3d 491, 498 (D.D.C. 2018) (quoting *Consarc Corp. v. U.S. Treasury Dep't, Off. Of Foreign Assets Control*, 71 F.3d 909, 913 (D.C. Cir. 1995)), which is the procedural structure under which EOIR had operated for decades prior to this rule. *See* Reply at 10; *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc) (McConnell, J., concurring) ("[I]t is sometimes necessary to require a party who has recently

_____

[2] *Cf., e.g.*, *Wyoming v. U.S. Dep't of Interior*, Nos. 18-8027 & 18-8029, 2018 WL 2727031 (10th Cir. June 4, 2018) (refusing to stay order issued by district court under Section 705 more than a year after rule's effective date); *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 562 (D.C. Cir. 2015) (Kavanaugh, J., dissenting) (stating that then-Judge Kavanaugh would have stayed a rule under Section 705, without mentioning that the effective date had already passed and the petitioners did not request a stay until after the effective date); *id.* at 557-58 (majority op.) (denying stay on unrelated grounds, without suggesting that passage of effective date was relevant); *Nw. Immigrant Rts Project v. USCIS*, No. 19-cv-3282, 2020 WL 5995206, at *1 (D.D.C. Oct. 9, 2020) (staying rule under Section 705 six days after its original effective date, although another court had already stayed it).

disturbed the status quo to reverse its actions. Such an injunction restores, rather than disturbs, the status quo ante, and is thus not an exception to the rule." (citing 11A Wright, Miller & Kane, *Federal Practice and Procedure* § 2948 (2d ed.1995))). As Judge Illston wrote when rejecting this exact argument last week, "[h]ere, the last uncontested status preceding the current controversy is the status quo that existed prior to the implementation of the Rule, and thus plaintiffs seek a prohibitory injunction." *Centro Legal de la Raza v. EOIR*, No. 21-cv-00463, 2021 WL 916804, at *21 (N.D. Cal. Mar. 10, 2021).

Indeed, in most respects the prior rules are still the status quo *now* in cases filed before the Rule's effective date because many of the Rule's provisions apply only to cases, appeals, or motions filed after January 15, 2021. *See* 85 Fed. Reg. 81,588, 81,588 (Dec. 16, 2020); Hrg. Tr. at 5:17-24. Since provisions of the Rule impacting appeals operate prospectively, the majority of appeals pending before the BIA will be adjudicated under pre-Rule practices, forcing both Plaintiffs and the courts themselves to navigate a bifurcated system in which most appeals will be controlled by the prior rules and others by the new Rule. The Court thus has power to "preserve status or rights" by enjoining implementation of the Rule under Section 705.

In sum, whether the Court bases its authority on Section 705 or Rule 65, the result is the same: the Court plainly has authority to issue a stay or injunctive relief prohibiting enforcement of the Rule pending its resolution of this case.[3]

---

[3] If Defendants argue that the Court should deny Plaintiffs' requested relief simply because another district court has already enjoined the Rule, this argument should be rejected. As a court in the Northern District of Illinois recently explained:

> Neither the parties nor this court have any power over or knowledge of whether and, if so, when . . . preliminary injunctions [entered by other courts] will be lifted or modified. Even a temporary lag between the lifting of both injunctions and the entry of a preliminary injunction by this court would entail some irreparable harm.

## II.    This Court Has Jurisdiction to Consider This Case and Thus May Stay or Enjoin the Rule.

At argument, Defendants' opposition to a stay of the agency's action appeared to turn, at least in part, on their position that this Court lacks jurisdiction to hear the case at all. Plaintiffs have already showed in their brief that this argument lacks merit, Reply at 1-5; *see also Centro Legal de La Raza*, 2021 WL 916804, at *21-23. None of Defendants' contentions at the hearing undermine that conclusion. Without repeating previous briefing, Plaintiffs offer three points in response.

First, Defendants argued that "where there's a comprehensive judicial review scheme, claims falling outside that scheme cannot be reviewed." Hrg. Tr. 29:12-14 (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984), and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)); *see also* Opp. at 9 (citing *Block*, 467 U.S. at 344-51). Aside from generally invoking the *Thunder Basin* line of cases, however, Defendants make no attempt to actually conduct the analysis these cases require. *See, e.g.*, *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (asking whether an intent to require a litigant to proceed through a statutory review scheme is "fairly discernible in the statutory scheme," and whether the litigant's claims are "of the type Congress intended to be reviewed within [the] statutory structure" (quoting *Thunder Basin*, 510 U.S. at 207, 212)).

In fact, as numerous courts have held, the Immigration and Nationality Act's ("INA") provisions structuring review of final removal orders do not apply to APA challenges brought by legal services organizations against generally applicable regulations.[4] An intent to deprive *pro*

---

*Cook Cty., Illinois v. McAleenan*, 417 F. Supp. 3d 1008, 1030 (N.D. Ill. 2019), *aff'd sub nom. Cook Cty., Illinois v. Wolf*, 962 F.3d 208 (7th Cir. 2020); *see also, e.g.*, *Nw. Immigrant Rts Project*, 2020 WL 5995206, at *1 (staying rule that had already been stayed by another court).

[4] *See, e.g.*, *Centro Legal de la Raza*, 2021 WL 916804, at *22-23 (rejecting Defendant's jurisdictional argument as it relates to this Rule); *CLINIC v. EOIR*, No. 20-cv-03812, 2021 WL 184359, at *7 (D.D.C. Jan. 18, 2021) ("[C]ourts have uniformly read 'arising from' to delineate between claims that 'directly regard[] the removal hearing and collateral issues,'" such as "when a rule of general applicability is challenged outside the context of a removal proceeding" (quoting *S. Poverty L. Ctr. v. DHS*, No. 18-cv-760, 2020 WL 3265533, at *15 (D.D.C. June 17, 2020)); *Cap. Area Immigrants' Rts Coal. v. Trump*, 471 F. Supp. 3d 25, 40 (D.D.C. 2020) ("[F]undamentally, the text of Section 1252 provides no support for the proposition that

*bono* legal services organizations such as Plaintiffs of any opportunity to challenge rules of general applicability under the APA is thus not "fairly discernible in the statutory scheme." *Thunder Basin*, 510 U.S. at 207 (quoting *Block*, 467 U.S. at 351). In fact, Congress was well aware of the existence of legal service providers, as the INA's repeated reference to their role shows, but chose not to discuss them or claims that they may have in any way in Section 1252. *See* 8 U.S.C. § 1229a(b)(2) (requiring that noncitizens in removal proceedings be provided a list of *pro bono* attorneys); *id.* § 1443(h) (requiring the attorney general to work with "relevant organizations" to "broadly distribute information concerning" the immigration process); *id.* § 1158(d)(4)(A)–(B) (requiring the distribution of a list of service providers to asylum seekers along with an advisal about the right to counsel); *id.* § 1101(i)(1) (referral to legal services for T visa applicants); *id.* § 1184(p)(3)(A) (same for U visa applicants). Nor are Plaintiffs' claims "of the type Congress intended to be reviewed within [the] statutory structure." *Jarkesy*, 803 F.3d at 15 (quoting *Thunder Basin*, 510 U.S. at 212). To the contrary, the only type of claim identified in the provisions on which Defendants rely are final orders of removal. *See* 8 U.S.C. § 1252(a), (b)(9).

The latter point is evident from the focus in Section 1252 on removal orders. As the Supreme Court noted in *INS v. St. Cyr*, 533 U.S. 289 (2001), each subsection of Section 1252(b), including (b)(9), applies "only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id.* at 313 (quoting 8 U.S.C. § 1252(b)). Orders subject to review under Section 1252(a)(1) are "final order[s] of removal." 8 U.S.C. § 1252(a)(1). Plaintiffs do not seek review of final orders of removal, nor could they since Plaintiffs are organizations and not noncitizens. Thus, no

---

organizations may not facially challenge under the APA immigration-related regulations that harm their own interests."), *appeal filed*, No. 20-5273; *O.A. v. Trump*, 404 F. Supp. 3d 109, 128 (D.D.C. 2019), (Sections 1252(b)(9) and (a)(5) do not preclude "a facial challenge to the validity of a regulation of general applicability based on the administrative record generated in the rulemaking"), *appeal filed*, No. 19-5272.

provision of Section 1252 is relevant to the court's jurisdiction. The Supreme Court's plain-text interpretation of Section 1252(b) in *St. Cyr* forecloses the government's contrary interpretation.[5]

Recent Supreme Court precedent as to Section 1252(b)(9) reinforces that conclusion. *See DHS v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1907 (2020) (the "targeted language" of Section 1252(b)(9) is "not aimed at this sort of case" challenging an agency's decision-making process); *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (plurality) (Section 1252(b)(9) "does not present a jurisdictional bar" in cases where respondents "are not asking for review of an order of removal . . . [or] challenging the decision to detain them in the first place or to seek removal . . . [or] challenging any part of the process by which *their* removability will be determined." (emphasis added)).

Second, Defendants' invocation of the Hobbs Act illustrates the absurdity of their position. Hrg. Tr. 30:10-19. Defendants invoke the Hobbs Act as a counterpoint to the proposition that many of the claims arising in this case—arbitrary and capricious rulemaking, violations of the Regulatory Flexibility Act, and reliance on a too-short comment period—could not be presented by noncitizens in their removal proceedings, in part because they would not have the administrative record of this rulemaking available to them to advance such claims. *See* 8 U.S.C. § 1252(b)(4)(A) (providing that the "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"). Defendants assert that because judicial review of *removal proceedings* under Section 1252 is governed by the Hobbs Act, *see id.* § 1252(a), a noncitizen could seek to have his case transferred from the court of appeals to a district court under 28 U.S.C. § 2347(b)(3) for factfinding and the presentation of the rulemaking administrative record— apparently after completing a lengthy administrative review process and during the pendency of a circuit court appeal. Tellingly, Defendants do not identify any examples of this procedure *ever* taking place.

---

[5] Although portions of *St. Cyr* were superseded by the REAL ID Act of 2005, *see Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020), that legislation did not disturb this holding. Courts continue to follow *St. Cyr*'s narrow reading of Section 1252(b). *See, e.g.*, *Casa de Md. v. DHS*, 924 F.3d 684, 697 (4th Cir. 2019).

Moreover, even if the Hobbs Act were a viable workaround for individual noncitizens, reliance on it here would completely eviscerate the ability of *organizations* to challenge the lawfulness of a regulation under the APA. A decision denying jurisdiction over this matter would "foreclose all meaningful judicial review" over Plaintiffs' claims. *See Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018). Plaintiffs cannot raise their injuries in removal proceedings. And even if respondents in removal proceedings could raise *some* APA challenges, they may not be able to bring claims that hinge on harm to organizations like Plaintiffs, such as the Regulatory Flexibility Act and notice-and-comment claims. *See* Mem. In Supp. of Pls. Mot. to Stay ("Mot. Memo."), ECF No. 9-1, 35-37. Consistent with the longstanding "'presumption favoring judicial review of administrative action'" in immigration cases, *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)), the Supreme Court has eschewed the overbroad reading of Section 1252(b)(9) that Defendants advocate. In *Jennings*, the Court held that the phrase "arising from" in Section 1252(b)(9) did not "present a jurisdictional bar" where the plaintiffs were "not asking for review of an order of removal," were "not challenging the decision to detain them in the first place or to seek removal," and were "not even challenging any part of the process by which *their* removability will be determined." *Jennings*, 138 S. Ct. at 841 (emphasis added); *see also Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019) (plurality, similar). The ability of some noncitizens to challenge some of the illegal aspects of the Rule in removal proceedings does not mean that Plaintiffs' facial challenge to an agency Rule "arises from" such proceedings.

Finally, Defendants' claim that *Ayuda v. Reno*, 7 F.3d 246 (D.C. Cir. 1993), limits the utility of *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479 (1991), is misplaced. Hrg. Tr. 30:20-31:6; *see also* Opp. 9-10. In *McNary*, the Supreme Court exercised jurisdiction over an immigration-related policy despite the invocation of a jurisdiction channeling provision and recognized a "critical difference" between an individualized determination and a "challenge to the procedures for making such determinations." 498 U.S. at 498. *Ayuda*, by contrast, is about the ripeness of pre-enforcement claims brought by impacted noncitizens. 7 F.3d at 248-49. It did not

discuss or even contemplate claims brought by organizations like Plaintiffs. Unlike the plaintiffs in *Ayuda*, there is no ripeness issue here because Plaintiffs have shown concrete, actualized harm. *See* Mot. Memo. at 38-44; Reply at 5-8, 25-27. Additionally, *Ayuda* was decided before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub L. 104-208, made major changes to the judicial review scheme in the INA and must be considered with that key distinction in mind, particularly when decisions like *Jennings* and *Regents*, which hold that courts do have jurisdiction in cases analogous to this one, also postdate that decision's rationale.

## <u>CONCLUSION</u>

For these reasons and the reasons stated in Plaintiffs' principal briefing and at argument, as well as those articulated in the bevy of related cases in this district, this Court should conclude that it has jurisdiction to hear Plaintiffs' claims. The Court should thus stay or enjoin the Rule.

Dated: March 19, 2021                    Respectfully submitted,

                                    By:    *s/ Keren Zwick*
                                        _____

Mary Van Houten Harper (D.C. Bar No. 1045137)*
NATIONAL IMMIGRANT JUSTICE CENTER
1099 New York Ave. NW
Washington, DC 20001
(312) 660-1370
mharper@heartlandalliance.org

*\* Admitted pro hac vice*

Jeffrey Dubner (D.C. Bar No. 1013399)
Benjamin Seel (D.C. Bar No. 1035286)
Sean A. Lev (D.C. Bar. No. 449936)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jdubner@democracyforward.org
bseel@democracyforward.org
slev@democracyforward.org

Keren Zwick (D.D.C. Bar. No. IL0055)
Mark Fleming
Tania Linares Garcia
NATIONAL IMMIGRANT JUSTICE CENTER
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
(312) 660-1370
kzwick@heartlandalliance.org
mfleming@heartlandalliance.org
tlinaresgarcia@heartlandalliance.org

Sarah Thompson (D.D.C. Bar. No. CA00073)
NATIONAL IMMIGRANT JUSTICE CENTER
PO Box. 124975
San Diego, CA 92101
(312) 660-1370
sthompson@heartlandalliance.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Keren Zwick, hereby certify that on March 19, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Dated: March 19, 2021                          By: *s/ Keren Zwick*
                                               Keren Zwick
                                               NATIONAL IMMIGRANT JUSTICE CENTER
                                               224 S. Michigan Ave., Suite 600
                                               Chicago, IL 60604